Anna Y. Park, SBN 164242
anna.park@eeoc.gov
Nakkisa Akhavan, SBN 236260
nakkisa.akhavan@eeoc.gov
Taylor Markey, SBN 319557
taylor.markey@eeoc.gov
Andrea E. Ringer, SBN 307315
andrea.ringer@eeoc.gov
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
255 East Temple Street, Fourth Floor
Los Angeles, CA 90012
Telephone: (213) 785-3080
Facsimile: (213) 894-1301

Attorneys for Plaintiff
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, <br><br> Plaintiff, <br><br> vs. <br><br> MEATHEAD MOVERS, INC., and DOES 1-10, inclusive, <br><br> Defendants. | Case No.: <br><br> **COMPLAINT—ADEA** <br> **CIVIL RIGHTS/EMPLOYMENT** <br> **DISCRIMINATION** <br><br><br> **JURY TRIAL DEMAND** |

## NATURE OF THE ACTION

1. This is an action under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621, *et seq.* ("ADEA"), to correct unlawful employment practices on the basis of age and to provide appropriate relief to a class of aggrieved individuals who were adversely affected by such practices because of their age (40 and over). As set forth with greater particularity below, Plaintiff United States Equal Employment Opportunity Commission ("Plaintiff", "EEOC", or "Commission") alleges that since at least 2017, Defendant Meathead Movers, Inc., a moving, packing, and storage company, and DOES 1-10 ("Defendant" or "Meathead Movers") intentionally failed to recruit and hire individuals within the protected age group (40 and over) in violation of the ADEA. Plaintiff further alleges that since at least 2017, Defendant engaged in advertising to deter individuals in the protected age group from applying for positions with Defendant. Plaintiff seeks relief for a class of individuals that were deterred from seeking employment because of their age (40 and over) or denied employment because of their age (40 and over), in moving, packing, and customer service positions. As a result of Defendant's unlawful practices, Claimants suffered lost wages.

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 7(b) of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 626(b) ("the ADEA"), which incorporates by reference Sections 16(c) and 17 of the Fair Labor Standards Act of 1983, as amended, 29 U.S.C. §§ 216(c) and 217 ("the FLSA").

3. The employment practices alleged to be unlawful were and are now

being committed within the jurisdiction of the United States District Court for the Central District of California, pursuant to 28 U.S.C. § 1391(b).

## PARTIES

4.      Plaintiff EEOC is the agency of the United States of America charged with the administration, interpretation, and enforcement of the ADEA. The EEOC is expressly authorized to bring this action by Section 7(b) of the ADEA, 29 U.S.C. § 626(b), as amended by Section 2 of Reorganization Plan No. 1 of 1978, 92 Stat. 3781, and by Public Law 98-532 (1984), 98 Stat. 2705.

5.      At all relevant times, Meathead Movers has continuously been a California corporation doing business throughout the State of California. Meathead Movers is headquartered in San Luis Obispo County and provides moving, packing, and storage services across California.

6.      At all relevant times, Defendant has continuously had at least twenty employees.

7.      At all relevant times, Meathead Movers has continuously been an "employer" engaged in an industry affecting commerce within the meanings of Sections 11 (b), (g), and (h) of the ADEA, 29 U.S.C. § 630(b), (g), and (h).

8.      All of the acts and failures to act alleged herein were duly performed by and attributable to all Defendants, each acting as a successor, agent, alter ego, employee, indirect employer, joint employer, integrated enterprise and/or under the direction and control of the others, except as specifically alleged otherwise. Said acts and failures to act were within the scope of such agency and/or employment, and each Defendant participated in, approved and/or ratified the unlawful acts and omissions by the other Defendants complained of herein. Whenever and wherever reference is made in this Complaint to any act by a Defendant or Defendants, such allegations and reference shall also be deemed to mean the acts and failures to act of each defendant acting individually, jointly, and/or severally.

9.      Plaintiff is ignorant of the true names and capacities of each defendant

sued as DOES 1 through 10, inclusively, and therefore Plaintiff sues said defendants by fictitious names. Plaintiff reserves the right to amend the complaint to name each DOE defendant individually or corporately as it becomes known. Plaintiff alleges that each DOE defendant was in some manner responsible for the acts and omissions alleged herein and Plaintiff will amend the complaint to allege such responsibility when the same shall have been ascertained by Plaintiff.

## ADMINISTRATIVE PROCEDURES

10. More than thirty days prior to the institution of this lawsuit, the Local Director of the EEOC Fresno Local Office initiated an investigation of Meathead Movers' employment practices and compliance with the ADEA, issuing a Directed Charge of Discrimination pursuant to 29 U.S.C. § 626 and 29 C.F.R. §§ 1626.4, 1626.15.

11. On August 22, 2019, the EEOC issued a Letter of Determination finding reasonable cause to believe that Meathead Movers subjected a class of individuals age 40 and over to a pattern or practice of discriminatory recruitment and hiring based on age (40 and over), in violation of the ADEA. The EEOC further found that Meathead Movers chilled and/or deterred individuals age 40 and over from seeking and/or obtaining employment because of their age (40 and over) in violation of the ADEA.

12. Prior to the institution of this lawsuit, the EEOC engaged in efforts to provide Defendant the opportunity to remedy the unlawful employment practices and to effect voluntary compliance with the ADEA through informal methods of conciliation, conference, and persuasion within the meaning of Section 7(b) of the ADEA, 29 U.S.C. § 626(b).

13. The EEOC was unable to secure from Defendant a conciliation agreement acceptable to the EEOC.

14. On June 17, 2021, the EEOC issued a Notice of Failure of Conciliation to Defendant.

15. All conditions precedent to the institution of this lawsuit have been met.

## STATEMENT OF CLAIMS

16. Meathead Movers is a company providing packing, moving, and storage services throughout California.

17. Meathead Movers describes itself as "Student Athlete Movers."

18. Since at least 2017, Defendant has regularly and purposefully discriminated on the basis of age including but are not limited to, a pattern or practice of discrimination against qualified prospective and actual applicants in the protected age group because of their age in hiring and recruitment for moving, packing, and customer service positions companywide.

19. Defendant has engaged in the following unlawful recruitment, hiring, and advertising practices:

    a. Since at least 2017, Meathead Movers has systematically and intentionally engaged in specifically recruiting individuals under age 40 into moving, packing, and customer service positions companywide, to the exclusion of qualified individuals in the protected age group. Defendant failed to recruit qualified applicants in the protected age group for the positions sought because of their age.

    b. Since at least 2017, Meathead Movers has systematically and intentionally failed to hire to applicants age 40 and over into moving, packing, and customer service positions companywide. Defendant denied employment to qualified applicants in the protected age group for the positions sought because of their age.

    c. Since at least 2017, Defendant has printed, or caused to be printed or published, advertisements relating to employment with Meathead Movers which indicate a preference, specification, or

limitation based on age, in violation of Section 4(e) of the ADEA, 29 U.S.C. § 623(e).

20. Since 2017, Meathead Movers has hired thousands of new employees.

21. Defendant's recruitment practices disproportionately target individuals under age 40 and exclude individuals in the protected age group from being recruited.

22. Since at least 2017, Defendant has maintained a standard operating procedure of denying employment to applicants in the protected age group.

23. Defendant's hiring of employees in the protected age group is well below the expected hiring of applicants in the protected age group based on the applications submitted and/or local availability data. The disparity is statistically significant across moving, packing, and customer service positions.

24. Meathead Movers has maintained explicit and implicit hiring and recruitment practices to hire young individuals and exclude applicants in the protected age group, which individually and together operate to create and maintain a company and company "culture" composed of young employees. These companywide hiring and recruitment practices include but are not limited to:

   a. branding itself as a company that hires and employs "Student Athlete Movers";
   b. exclusively depicting young individuals in Meathead Movers marketing, recruitment, and training materials online, including on its website, social media, physical merchandise, and posters in Meathead Movers' physical workplaces;
   c. hiring externally only for entry-level positions in moving, packing, and customer service, and promoting from within;
   d. instructing employees, mostly individuals in their 20s, to recruit prospective applicants "where you would hang out" and to seek out student athletes at local gyms and colleges;

    e.    offering incentives to employees that successfully recruit suitable applicants via word-of-mouth;

    f.    requiring prospective applicants to submit applications in-person at a Meathead Movers facility;

    g.    seeking information regarding school enrollment in employment applications;

    h.    applying subjective hiring criteria, including encouraging hiring officials to look for "culture fits," whereby "cultural fit" is proxy for young age, resulting in the screening out of applicants in the protected age group;

    i.    excluding applicants with moving experience, resulting in exclusion of qualified applicants in the protected age group; and

    j.    advertising minimal qualifications for entry-level positions in moving, packing, and customer service, while hiring officials apply objective and subjective hiring criteria differently to young applicants and applicants in the protected age group. For example, advertising "flexible hours" that "work with your school schedule" but rejecting an applicant in the protected age group during the interview process because the applicant was unavailable part of one day per week.

25.    Since at least 2017, Meathead Movers has repeatedly made statements and representations that demonstrate its preference for young workers and that the exclusion of older workers is intentional. These unlawful practices include, but are not limited to, the following:

    a.    Meathead Movers encourages hiring officials to screen out applicants in the protected age group throughout the application process, including at the resume selection stage, the phone interview stage, and the in-person interview stage;

b. Meathead Movers' founders and executive management have made numerous public statements that Meathead Movers hires students and young people and describe "young and energetic-student athletes" as part of their founding vision. Meathead Movers markets its moving services as superior because it employs college students, many under age 25;

c. Since at least 2017, Meathead Movers' hiring officials repeatedly told unsuccessful older applicants that they were older than Meathead Movers' employees and asked how they felt "about working with younger employees;"

d. Since at least 2017, Meathead Movers' hiring officials repeatedly told unsuccessful older applicants for moving, packing, and/or customer service positions that Meathead Movers only hires "young" people or "college-aged" students and athletes. For example, Meathead Movers' hiring officials told applicants during job interviews that Meathead Movers only hires students, but a qualified student applicant in the protected age group was rejected because he was "older than most of the students [they] hire;"

e. Meathead Movers excluded qualified applicants in the protected age group from moving, packing, and customer service positions. For example, a Meathead Movers hiring official told an unsuccessful older applicant that because of the heavy lifting, he was looking for younger people; and

f. Meathead Movers' hiring officials used stereotypes to exclude older workers from moving, packing, and customer service positions by repeatedly concluding older workers were not a "cultural fit" or were "not Meathead Movers material" due to their age. For example, interview notes regarding an applicant in the protected age

group state, "I feel like [she] is very qualified for the position. Her prior experience would suggest she will excel in her position here. I do think she is a little intimidated by the age of the employees who work here. And although I personally think it is immoral/unethical[,] I do not think she is a good cultural fit *because of her age*." (emphasis added).

26. Since at least 2017, Defendant has printed, or caused to be printed or published, advertisements relating to employment with Meathead Movers which indicate a preference, specification, or limitation based on age, in violation of Section 4(e) of the ADEA, 29 U.S.C. § 623(e). These companywide unlawful employment practices include, but are not limited to:

    a. branding Meathead Movers as "Student Athlete Movers" and defining "a Meathead" as a local college student, which deters individuals in the protected age group from seeking employment because of their age by signaling that Meathead Movers only hires students, the majority which are not in the protected age group;

    b. publishing or causing to be published advertisements and marketing materials stating Meathead Movers employs "student-athletes", which expresses a preference, specification, or limitation based on age for hiring young persons, and deters individuals in the protected age group from seeking employment because of their age;

    c. publishing images of young individuals in Meathead Movers marketing and recruitment materials, including company signs, commercials, website, social media, and physical merchandise, which deters individuals in the protected age group from seeking employment because of their age by signaling that Meathead Movers only employs young people; and

      d.   requesting information regarding school schedules and classwork in job-interest forms and employment applications and publishing job descriptions directed at a young workforce such as that Meathead Movers offers "flexible hours" that "work with your school schedule."

27. Since at least 2017, these unlawful practices have had a significant deterrent effect on individuals in the protected age group, resulting in Meathead Movers' failure to hire qualified prospective and actual applicants in the protected age group into moving, packing, and customer service positions companywide because of their age (40 and over).

28. Since at least 2017, these unlawful practices have resulted in a pattern or practice of failing to hire applicants in the protected age group into moving, packing, and customer service positions companywide because of their age (40 and over).

29. Since at least 2017, the protected age group's representation in Meathead Movers' pool of applicants was below what would be expected given the protected age group's representation in the relevant geographic regions and occupations.

30. Meathead Movers' specific policies and practices cannot be justified by any reasonable or legitimate business purpose for a moving, packing, and storage company, other than maintaining its young workforce.

31. These unlawful employment practices complained of in paragraphs 16 to 30 above were sufficiently frequent to be Defendant's regular procedure or practice and constitute a pattern or practice of resistance to the full enjoyment of rights protected under the ADEA.

32. The effect of the unlawful employment practices complained of in paragraphs 16 to 30 above has been to deprive a class of qualified individuals in the protected age group of equal employment opportunities and otherwise to affect

adversely their status as potential applicants or employees, because of their age (40 and over).

33. The unlawful employment practices complained of in paragraphs 16 to 30 above were and are intentional and willful within the meaning of Section 7(b) of the ADEA, 29 U.S.C. § 626(b).

## PRAYER FOR RELIEF

Wherefore, the EEOC respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, successors, assigns, and all persons in active concert or participation with them, from engaging in any employment practices that discriminate on the basis of age (40 and over).

B. Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, successors, assigns, and all persons in active concert or participation with them, from printing, or causing to be printed or published, notices or advertisements relating to employment with Meathead Movers which indicate a preference, specification, or limitation based on age.

C. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for individuals in the protected age group, and which eradicate the effects of its past and present unlawful employment practices on the basis of age.

D. Order Defendant to make whole a class of qualified aggrieved individuals age 40 and over adversely affected by Defendant's discriminatory practices in violation of the ADEA by providing:

    1. Appropriate back pay, including benefits, with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices; and

    2. Liquidated damages in an amount equal to the backpay amount for Defendant's willful violation of the ADEA.

  E. Award the EEOC its costs of this action.

  F. Grant such further relief as the Court deems necessary and proper in the public interest.

## JURY TRIAL DEMAND

The EEOC requests a jury trial on all questions of fact raised by its Complaint.

Dated: September 29, 2023    Respectfully Submitted,

            CHRISTOPHER LAGE,
            Deputy General Counsel

            U.S. EQUAL EMPLOYMENT
            OPPORTUNITY COMMISSION
            131 "M" Street, N.E.
            Washington, D.C. 20507

         By: _____
            ANNA Y. PARK,
            Regional Attorney

            NAKKISA AKHAVAN,
            Assistant Regional Attorney

            ANDREA E. RINGER,
            Senior Trial Attorney

            Los Angeles District Office

            U.S. EQUAL EMPLOYMENT
            OPPORTUNITY COMMISSION