MIRA HASHMALL (State Bar No. 216842)
mhashmall@millerbarondess.com
LAUREN M. BRODY (State Bar No. 337858)
lbrody@millerbarondess.com
MILLER BARONDESS, LLP
2121 Avenue of the Stars, Suite 2600
Los Angeles, California 90067
Telephone: (310) 552-4400
Facsimile: (310) 552-8400

Attorneys for Defendant
MEATHEAD MOVERS, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>MEATHEAD MOVERS, INC. and DOES 1-10, inclusive,<br><br>Defendants. | **CASE NO. 2:23-cv-08177-DSF-AGR**<br><br>**ANSWER**<br><br>Assigned to the Hon. Dale S. Fischer and Magistrate Judge Alicia G. Rosenberg |

Plaintiff U.S. Equal Employment Opportunity Commission ("EEOC") has engaged in a years-long campaign to extract millions of dollars in "back wages" from Defendant Meathead Movers, Inc. ("Meathead Movers") that it knows the company has no ability to pay, on behalf of "victims" that *do not exist*. The EEOC's investigation was not prompted by a single complaint of age discrimination.

Meathead Movers is a California-based moving company founded by brothers Evan and Aaron Steed. The Steeds started the business when they were in high school to earn money on a flexible schedule around (and to fund) playing sports. In 2011, the White House honored the Steeds on its inaugural Empact 100 List, which recognizes companies run by individuals under the age of 35 that inspire other young entrepreneurs. The Steeds oversaw Meathead Movers' transformation from an after-school gig to a bootstrap business that employed over a hundred people—typically on a part-time or temporary basis. Meathead Movers embraced its role as a "stepping stone job." Meathead Movers offers internal trainings, such as resume writing, to aid employees in marketing the skills they build moving for Meathead Movers into careers at Meathead Movers or elsewhere. The majority of office or management positions are filled internally, by employees hired originally as movers.

Professional growth and social responsibility remain key aspects of the corporate culture. Meathead Movers offers its elite moving services for free to victims of domestic violence seeking to flee their abusers. This is a decades-long commitment that has earned Meathead Movers national accolades from countless organizations dedicated to supporting victims of domestic violence.

This case is predicated on the false notion that job criteria that emphasize physical strength and agility are somehow proxies for illegal age discrimination. That is simply not true. It is a simple fact that moving heavy objects is the core of Meathead Movers' business. In addition to having the ability to lift, push, and pull objects in excess of 150 pounds without damaging them, movers must jog when they are not carrying items. These job requirements are intrinsically demanding;

they do not constitute intentional discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA").

Meathead Movers hereby answers the Complaint and asserts its affirmative defenses as follows:

## NATURE OF THE ACTION

1. Paragraph 1 contains the EEOC's description of this case and the relief sought, not factual allegations to which a response is required. To the extent a response is required, Meathead Movers admits that the EEOC filed this action under the ADEA on the theory that Meathead Movers "intentionally failed to recruit and hire individuals . . . 40 and over" to work at Meathead Movers' business, which the EEOC concedes is a "moving, packing, and storage company." Meathead Movers further admits that the EEOC has blamed Meathead Movers' advertising for allegedly "deter[ring] individuals in the protected age group from applying for positions with Meathead Movers." Meathead Movers further admits that, through this lawsuit, the EEOC seeks relief in the form of lost wages for "Claimants," which the EEOC uses in Paragraph 1 as a defined term but does not define anywhere in its Complaint. Meathead Movers denies that it has engaged in any wrongdoing in its hiring or advertising; and denies that anyone was intentionally not recruited or hired, was deterred from seeking employment, or was otherwise denied employment because of their age.

## JURISDICTION AND VENUE

2. Meathead Movers admits that there is federal jurisdiction in this case.

3. The EEOC concedes that Meathead Movers provides moving services across California but fails to allege where the "employment practices alleged to be unlawful" took place, so Meathead Movers lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 3 of the Complaint. Meathead Movers denies that it engaged in any unlawful employment practices

anywhere. However, Meathead Movers does not intend to contest that venue is proper in the Central District of California.

## PARTIES

4. Paragraph 4 contains legal conclusions to which no response is required. To the extent a response is required, Meathead Movers lacks knowledge or information regarding the EEOC's enabling laws sufficient to admit or deny Paragraph 4.

5. Meathead Movers admits that it has continuously been a California corporation that does business throughout the State of California—specifically, providing the moving and packing services referred to in the second sentence of Paragraph 5. Meathead Movers further admits that its business was previously headquartered in San Luis Obispo County, and that it provides moving and packing services across California. Meathead Movers does not itself provide any storage services (and such services are offered to clients on a more limited geographic scale in Central California).

6. The EEOC does not define what it means by "[a]t all relevant times." Brothers Evan and Aaron Steed started Meathead Movers when they were high school athletes and were its only movers and employees for many years. The brothers organically grew Meathead into the largest independent moving company in California, and Meathead Movers admits it currently employs more than 20 individuals and has for years.

7. Paragraph 7 contains legal conclusions to which no response is required. To the extent a response is required, Meathead Movers lacks knowledge or information regarding the ADEA's scope sufficient to admit or deny Paragraph 7.

8. Paragraph 8 contains legal conclusions to which no response is required. To the extent a response is required, Meathead Movers denies Paragraph 8.

9. Paragraph 9 contains legal conclusions to which no response is required. To the extent a response is required, Meathead Movers lacks knowledge or information sufficient to admit or deny whether the EEOC is ignorant of the names and capacities of the purported DOE Defendants, but denies that the EEOC has "reserve[d] the right" through Paragraph 9 of joining additional, as-yet-unnamed Defendants. Not only is the use of DOE Defendants disfavored in federal court, but the EEOC cannot plausibly allege it lacked the opportunity to identify any such Defendants prior to filing its complaint in light of the compulsory powers available to the EEOC as a federal agency and the fact that it admits it has been investigating Meathead Movers since 2017. *See Gillespie v. Civiletti*, 629 F.2d 637 (9th Cir. 1980). Moreover, the Complaint references DOE Defendants only in the caption, the "Nature of the Action" introduction, and this Paragraph 9, and the Complaint is devoid of any factual allegations against these supposed DOE Defendants sufficient to provide Meathead Movers with notice of their identities or alleged wrongdoing.

## ADMINISTRATIVE PROCEDURES

10. Meathead Movers admits the allegations of Paragraph 10.

11. Meathead Movers denies the allegations of Paragraph 11, including that the EEOC engaged in any kind of adjudicative proceeding that resulted in factual findings of wrongdoing, but admits that the EEOC issued a Letter of Determination that initiated the EEOC's conciliation process.

12. Meathead Movers denies the allegations of Paragraph 12, including that any unlawful employment practices occurred, or that the EEOC engaged in good faith conciliation efforts. Meathead Movers admits the EEOC issued a Letter of Determination that initiated the EEOC's conciliation process, along with an exorbitant demand that would have bankrupted the small business.

13. Meathead Movers admits that it participated in the EEOC's conciliation process, and attempted to negotiate a resolution, despite the fact that Meathead Movers denies any unlawful conduct. Those efforts were unsuccessful.

14.   Meathead Movers admits the allegations of Paragraph 14.

15.   Paragraph 15 contains legal conclusions to which no response is required. To the extent a response is required, Meathead Movers lacks knowledge or information regarding the conditions precedent to an ADEA lawsuit sufficient to admit or deny Paragraph 15.

## STATEMENT OF CLAIMS

16.   Meathead Movers admits the allegations of Paragraph 16, although it denies that it directly provides storage services (which are also offered on a more limited geographic scale in Central California).

17.   Meathead Movers admits that it has in the past used the phrase "Student Athlete Movers" in marketing and other materials, which accurately referred to and reflected the origin of the company. Meathead Movers was founded because Aaron and Evan Steed, who were both athletes who needed jobs that worked with their school and sport schedules. When they started the company, they hired their fellow classmates who were struggling with the same scheduling issue. As a result, they developed the tag line "student athlete movers." While Meathead Movers helps struggling students like Aaron and Evan, it does not reject qualified non-student or older applicants. Meathead Movers encourages all qualified applicants to apply.

18.   Paragraph 18 contains legal conclusions to which no response is required. To the extent a response is required, Meathead Movers denies Paragraph 18.

19.   Meathead Movers denies Paragraph 19, including sub-paragraphs (a)–(c). Meathead Movers has recruited, hired, and marketed to individuals without regard to employee or applicant age, and has had numerous employees and applicants over 40. Meathead Movers denies the existence of any advertisements indicating a preference, specification, or limitation in hiring based on applicant age.

20. Meathead Movers admits the allegations of Paragraph 20, although many of those employees worked on a part-time or temporary basis and at no time has Meathead Movers ever simultaneously employed "thousands" of employees.

21. Meathead Movers denies Paragraph 21. Meathead Movers has recruited, hired, and marketed to individuals without regard to employee or applicant age, and has had numerous employees and applicants over 40.

22. Meathead Movers denies Paragraph 22.

23. Meathead Movers lacks knowledge or information regarding "local availability data" sufficient to admit or deny the first sentence of Paragraph 23, but denies that its hiring of employees in the protected age group is below what is expected.

24. Meathead Movers denies that Paragraph 24, including sub-paragraphs (a)–(j) (individually or together) demonstrate recruitment practices that exclude applicants in the protected age group.

25. Meathead Movers denies Paragraph 25, including sub-paragraphs (a)–(f).

26. Meathead Movers denies Paragraph 26, including sub-paragraphs (a)–(d).

27. Paragraph 27 contains legal conclusions to which no response is required. To the extent a response is required, Meathead Movers denies Paragraph 27.

28. Paragraph 28 contains legal conclusions to which no response is required. To the extent a response is required, Meathead Movers denies Paragraph 28.

29. Paragraph 29 contains legal conclusions to which no response is required. To the extent a response is required, Meathead Movers denies Paragraph 29.

30. Paragraph 30 contains legal conclusions to which no response is required. To the extent a response is required, Meathead Movers denies Paragraph 30.

31. Paragraph 31 contains legal conclusions to which no response is required. To the extent a response is required, Meathead Movers denies Paragraph 31.

32. Paragraph 32 contains legal conclusions to which no response is required. To the extent a response is required, Meathead Movers denies Paragraph 32.

33. Paragraph 33 contains legal conclusions to which no response is required. To the extent a response is required, Meathead Movers denies Paragraph 33.

## PRAYER FOR RELIEF

The remainder of the Complaint contains the EEOC's prayer for relief, which includes a request for injunctive relief, damages, and costs. Although and, indeed, *because* Meathead Movers is confident that it does not discriminate, it remains willing to agree to refrain "from engaging in any employment practices that discriminate on the basis of age (40 and over)," ceasing any advertisements that the EEOC can identify that suggest "a preference, specification, or limitation based on age," and supplementing its existing "policies, practices, and programs which provide equal employment opportunities for individuals in the protected age group, and which eradicate [any] effects of its past and present unlawful employment practices on the basis of age."

Meathead Movers simply cannot agree to the EEOC's proposed financial penalties, which lack any foundation and which would devastate the business.

## AFFIRMATIVE DEFENSES

Meathead Movers hereby pleads the following separate and additional defenses to the Complaint. By alleging the separate and additional defenses set

forth below, Meathead Movers intends no alteration of the burden of proof and/or burden of going forward with evidence that otherwise exists with respect to any particular issue at law or in equity. Furthermore, all such defenses are pleaded in the alternative, and do not constitute an admission of liability or that Plaintiff is entitled to any relief whatsoever. Without limiting or waiving any defenses available to it, and based on information and belief unless otherwise stated, Meathead Movers alleges as follows:

## FIRST AFFIRMATIVE DEFENSE
### (Reasonable Factor Other Than Age ("RFOA"))

1. Meathead Movers is a moving business founded in the college town of San Luis Obispo, California.

2. It was founded by two student athletes, brothers Aaron and Evan Steed, when they were in high school. The Steeds continued the business through college while also playing sports. Indeed, they *were* the business for many years.

3. Meathead Movers recruits through a variety of means, including its public website; online community and job boards such as Craig's List, Indeed, and Facebook; and word of mouth. Applicants may also obtain an application in person at one of Meathead Movers' branches.

4. Meathead Movers' job application does not request any information about applicants' ages, including information that could be used as a proxy for age (like graduation dates). The application specifically informs applicants to "omit any information that would indicate [their] race, age, religion, marital status, sexual orientation, or any disability or medical condition. Meathead Movers is an Equal Opportunity Employer, and will not base decisions on such factors."

5. Meathead Movers does sometimes participate in on-campus job fairs, but only at the invitation of the college. Moreover, Meathead Movers typically visits community colleges where there are a higher percentage of non-traditional and older students.

6. The nature of Meathead Movers' business tends to attract a young workforce because the majority of the job requires strenuous physical work for several hours.

7. In addition, although Meathead Movers compensates its employees competitively within the manual labor industry, the wages are modest.

8. The vast majority of job openings at Meathead Movers are for moving positions—i.e., the employees who perform the actual moving, lifting, and carrying of customers' items.

9. The job requirements for these positions include the ability to lift, carry, push, and pull 150 pounds and jog when not carrying items for an entire moving shift.

10. These requirements are based on a factor other than age. Having employees with the physical strength to move clients' belongings without damaging them or injuring themselves and other employees is a legitimate interest of and reasonably related to the needs of Meathead Movers' moving business.

11. Moreover, Meathead Movers promotes itself as "the jogging movers" and thus, requires its employees to live up to that reputation.

12. This concept is an integral part of Meathead Movers' brand due its popularity with customers because fees are based on hours, so customers anticipate that having their movers jog between carrying loads will result in fewer hours and consequently lower moving costs.

13. With respect to office or management positions, Meathead Movers prefers to promote from within instead of hiring from outside the company. Thus, most of the office and management positions are filled by employees who were originally hired as movers.

14. Meathead Movers' practice of promoting internally is based on legitimate business factors other than age. Internal promotion improves employee engagement, reduces turnover, and is time- and cost-effective for Meathead Movers.

654839.4

10

ANSWER

It allows Meathead Movers to capitalize on the benefits of training and investing resources on earlier hires who are already integrated into the company and understand the moving business, and thus know how to support it on the administrative/marketing side. These benefits are a legitimate interest of and reasonably related to the needs of Meathead Movers' moving business.

## SECOND AFFIRMATIVE DEFENSE

### (Failure To Reasonably Investigate)

15. On November 22, 2017, the Fresno Local Office of the EEOC independently initiated a charge against Meathead Movers under the ADEA, alleging in conclusory terms that Meathead Movers discriminates based on age in its hiring practices.

16. The charge was unprompted by any claim of discrimination by an applicant or employee of Meathead Movers.

17. Meathead Movers timely submitted a detailed position statement responding to the charge on December 22, 2017, in which Meathead Movers refuted each of the EEOC's allegations.

18. As Meathead Movers explained in its position statement, Meathead Movers does not consider age in any of its hiring or employment decisions. Although the majority of Meathead Movers' applicant pool and workforce is under the age of 40, this is due to the physical nature of the job and not because of any age discrimination.

19. Meathead Movers also addressed the EEOC's criticism of Meathead Movers' tag line, "student athlete movers," which previously appeared in some of Meathead Movers' marketing materials but has since been phased out. This tag line refers to the origin of the company: Meathead Movers was founded because Aaron and Evan Steed, who were both athletes, needed jobs that worked with their school and sport schedules.

20. Meathead Movers does not reject non-student or older applicants. Meathead Movers encourages anyone to apply.

21. This is borne out in Meathead Movers' recruitment practices, which, as set forth above, are age-blind.

22. For purposes of responding to the EEOC's charge, Meathead Movers analyzed its application files and estimated that only 15 applicants appeared to be over the age of 40 and were not hired by Meathead Movers.

23. Meathead Movers provided the EEOC with detailed explanations regarding its reasons for not hiring those applicants, which had nothing to do with the applicants' ages.

24. These applicants were not chosen because they either requested salaries well above the average salary for the position, they were applying for a position that was not available (for example, they were applying for a driver position but Meathead Movers was hiring for laborers), or they did not pass the requisite background check.

25. Meathead Movers also provided the EEOC with detailed explanations regarding its retention of employees over the age of 40. In the last five years, Meathead Movers has had three employees who were 40 years old or older leave the company: one was terminated and the other two quit. All three employees worked in the Headquarters. The first of these three employees was terminated for insubordination and unprofessional conduct in the office.

26. The second employee quit because she did not like her job duties. Several years ago, Meathead Movers decided to add a kitchen and food service at the Headquarters for the employees. This employee was hired to work in the kitchen; after working a short time, she quit because she did not enjoy the job.

27. The third employee quit to pursue other career opportunities and to spend more time with her children.

28. Meathead Movers attached numerous exhibits to its position statement, including copies of its advertisements for job openings, a list of current and former employees, a copy of its job application form, its first interview checklist, a copy of its offer letters, its employee handbook, and its anti-discrimination and anti-harassment policy.

29. The EEOC has a duty to investigate a charge before filing suit.

30. The EEOC did not engage in a reasonable investigation with respect to its charge against Meathead Movers.

31. On August 22, 2019, without having interviewed any Company witnesses, the EEOC issued a Letter of Determination declaring it had reasonable cause to believe violations of the ADEA occurred.

32. Shortly thereafter, on September 9, 2019, the EEOC provided a monetary demand of $14,913,600.00 in back wages and liquidated damages for "identified" and "unidentified" class members.

33. No class members were, in fact, identified in the EEOC's Letter of Determination. The EEOC has never identified these alleged class members.

34. The EEOC also did not explain the number of purported class members, how they were determined (including whether the class is based on the number of unsuccessful applicants or some other group of individuals), their work qualifications, application history, or efforts to seek re-employment, or how back pay was calculated (including what hourly or weekly rate was utilized).

35. The only explanation provided by the EEOC in support of its nearly $15 million damages demand was that it was "based . . . on a 40-hour work week over a full year (52 weeks)."

36. The EEOC demanded a counter-offer within four days.

37. The EEOC's monetary demand has no basis in the record, which confirms that the EEOC did not conduct a good faith investigation of its charge against Meathead Movers. Not only is the purported class extremely nebulous, the

alleged damages sought did not correlate with the data Meathead Movers provided to the EEOC, or common sense.  Although Meathead Movers compensates its employees competitively, its movers do not make *millions of dollars* a year.

38. In June 2021, the EEOC ended conciliation efforts and forwarded the charge to prosecuting authorities.

### THIRD AFFIRMATIVE DEFENSE

### (Failure To State A Claim Upon Which Relief May Be Granted)

39. The EEOC's claim for age discrimination under the ADEA fails as a matter of law.

40. The Complaint fails to state any non-conclusory facts in support of the EEOC's allegations that Meathead Movers engaged in unlawful age discrimination.

41. The Complaint does not include a description of the relevant wrongful conduct, relevant dates and persons, or ages.  For example, the Complaint conclusorily states that "hiring officials" engaged in discriminatory behavior to exclude older workers, but does not identify a single person with hiring authority at Meathead Movers, or attribute any unlawful conduct to them.  The "interview notes" referred to in Paragraph 25(f) of the Complaint were not written by a hiring manager, but by an individual with no hiring power or management authority and who no longer works at Meathead Movers.

42. Rather than plead facts supporting a cognizable claim of age discrimination, the EEOC's complaint includes generalized allegations unsupported by the evidence intended to inflame the public and cause further harm to Meathead Movers' reputation.

### FOURTH AFFIRMATIVE DEFENSE

### (No Damages)

43. The EEOC is not entitled to recover damages on behalf of a putative class of "victims" in the form of "back pay and benefits" because there are no victims and no damages occurred.

## FIFTH AFFIRMATIVE DEFENSE

### (Failure To Mitigate)

44. The EEOC is not entitled to recover damages on behalf of a putative class of "victims" in the form of "back pay and benefits" because claimants, to the extent they exist, failed to mitigate their damages and because of other setoffs and reductions.

## SIXTH AFFIRMATIVE DEFENSE

### (No Willful Conduct)

61. The EEOC is not entitled to recover liquidated damages because any unlawful conduct by Meathead Movers was not willful.

## RESERVATION OF ADDITIONAL DEFENSES

Meathead Movers reserves its right to add, delete or modify any and all defenses that may pertain to the Complaint that are now or may become available in this action through clarification or amendment of the Complaint, through discovery, through further legal analysis of the EEOC's or Meathead Movers' claims and positions in this litigation, or otherwise.

## PRAYER FOR RELIEF

WHEREFORE, Meathead Movers prays that judgment be entered as follows:

A. Plaintiff takes nothing by reason of its Complaint;

B. The Complaint be dismissed with prejudice;

C. Meathead Movers recover its costs of suit, including attorneys' fees; and

D. Meathead Movers be awarded such other and further relief as the Court deems just and proper.

| | | |
|---|---|---|
| 1 | DATED: February 1, 2024 | MILLER BARONDESS, LLP |
| | | |
| | | By: _____ |
| | | MIRA HASHMALL |
| | | Attorneys for Meathead Movers |
| | | MEATHEAD MOVERS, INC. |

654839.4

16

ANSWER