Anna Y. Park, SBN 164242
anna.park@eeoc.gov
Nakkisa Akhavan, SBN 236260
nakkisa.akhavan@eeoc.gov
Taylor Markey, SBN 319557
taylor.markey@eeoc.gov
Andrea E. Ringer, SBN 307315
andrea.ringer@eeoc.gov
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
255 East Temple Street, Fourth Floor
Los Angeles, CA 90012
Telephone:  (213)f5 785-3080
Facsimile:  (213) 894-1301

Gaganjyot Sandhu, CA SBN 327379
gaganjyot.sandhu@eeoc.gov
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
555 W. Beech Street, Suite 504
San Diego, CA 92101
Telephone:  (213) 785-1614
Facsimile:  (213) 894-1301

Attorneys for Plaintiff U.S. EEOC

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, <br><br> Plaintiff, <br><br> vs. <br><br> MEATHEAD MOVERS, INC., and DOES 1-10, inclusive, <br><br> Defendants. | Case No.: 2:23-cv-08177-DSF-AGRx <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EEOC'S MOTION FOR BIFURCATION OF DISCOVERY & TRIAL** <br><br> Hearing: April 29, 2024 at 1:30 PM <br><br> Honorable Dale S. Fischer <br> United States District Judge |

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................1

II.  BACKGROUND ................................................................................2

     a. The Nature of the Claims. ..........................................................2

     b. The EEOC's Proposed Bifurcation Order. ..................................5

III. LEGAL STANDARD ........................................................................6

IV.  THE COURT SHOULD BIFURCATE DISCOVERY AND TRIAL, WITH ALL CLASS ISSUES ADDRESSED IN STAGE I. ......................7

     a. Bifurcation Is Necessary Given the Pattern-or-Practice Allegations. ........7

     b. Pattern-or-Practice Employment Discrimination Cases Are Ordinarily Tried in Two Stages. ....................................................9

     c. Bifurcation of Trial and Discovery Will Further Convenience and Efficiency and Avoid Prejudice. ..............................................11

          i.   Staged discovery and trial is more convenient and manageable. ....................................................................11
          ii.  Liability and damages are distinct separable issues. ......................12
          iii. Bifurcation defers costly individual discovery until after liability determination. ......................................13
          iv.  Bifurcation increases likelihood of settlement after Stage I. ........................................................................15
          v.   Bifurcation will better ensure just adjudication by preventing jury confusion and increasing judicial economy. ........16
          vi.  Bifurcation will not prejudice Meathead. ......................19

     d. A Finding of a Pattern or Practice of Discrimination Justifies an Award of Prospective Relief. .......................................21

     e. Liability for Liquidated Damages Should Be Addressed in Stage I. ........21

V.   CONCLUSION ................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amoco Oil Co. v. Borden, Inc.*,
    889 F.2d 664 (5th Cir. 1989) ...................................................................16

*Arnold v. United Artists Theatre Circuit, Inc.*,
    158 F.R.D. 439 (N.D. Cal. 1994)..........................................................9, 17

*Arthur Young & Co. v. U.S. Dist. Court*,
    549 F.2d 686 (9th Cir. 1977) ...................................................6, 13, 14, 20

*Barefield v. Chevron, U.S.A., Inc.*,
    No. C 86-2427 TEH, 1988 U.S. Dist. LEXIS 15816 (N.D. Cal.
    Dec. 6, 1988).........................................................................................23

*Bates v. United Parcel Serv.*,
    204 F.R.D. 440 (N.D. Cal. 2001)........................................................12, 13

*Bean v. Crocker Nat. Bank*,
    600 F.2d 754 (9th Cir. 1979) ...................................................................21

*Beck v. Boeing Co.*,
    60 F. App'x 38 (9th Cir. 2003) ...........................................................14, 21

*Cassino v. Reichhold Chems., Inc.*,
    817 F.2d 1338 (9th Cir. 1987) .................................................................22

*Cooper v. Fed. Reserve Bank of Richmond*,
    467 U.S. 867 (1984).........................................................................6, 7, 12

*Craik v. Minn. State Univ. Bd.*,
    731 F.2d 465 (8th Cir.1984) ......................................................................9

*Criswell v. Western Airlines, Inc.*,
    709 F.2d 544 (9th Cir. 1983) ...................................................................22

*EEOC v. Bass Pro Outdoor World, LLC*,
    826 F.3d 791 (5th Cir. 2016) .....................................................................7

*EEOC v. Board of Regents of the University of Wisconsin System*,
   288 F.3d 296 (7th Cir. 2002) ...............................................................22

*EEOC v. Celadon Trucking Services, Inc.*,
   No. 1:12-CV-0275, 2013 WL 1701074 (S.D. Ind. Apr. 18, 2013) ..................18

*EEOC v. Darden Restaurants, Inc.*,
   No. 15-20561-CIV, 2016 WL 9488708 (S.D. Fla. May 20, 2016) ..................10

*EEOC v. Dial Corp.*,
   156 F. Supp. 2d 926 (N.D. Ill. 2001).....................................................11

*EEOC v. Dial Corp.*,
   259 F. Supp. 2d 710 (N.D. Ill. 2003).....................................................18

*EEOC v. Hillstone Rest. Grp., Inc.*,
   No. 22CV3108JLRRWL, 2023 WL 5207988 (S.D.N.Y. Aug. 14,
   2023) ..............................................................................10, 22

*EEOC v. Lawler Foods, Inc.*,
   128 F. Supp. 3d 972 (S.D. Tex. 2015)...................................10, 12, 15, 19

*EEOC v. Mavis Discount Tire, Inc.*,
   129 F. Supp.3d 90 (S.D.N.Y. 2015) ........................................................9

*EEOC v. McDonnell Douglas Corp.*,
   960 F. Supp. 203 (E.D. Mo. 1996) .......................................10, 12, 20

*EEOC v. NEBCO Evans Distrib., Inc.*,
   No. 8:CV96-00644, 1997 WL 416423 (D. Neb. June 9, 1997) ............10, 14, 20

*EEOC v. Pape Lift, Inc.*,
   115 F.3d 676 (9th Cir.1997) ..............................................................22

*EEOC v. Performance Food Grp., Inc.*,
   16 F. Supp. 3d 576 (D. Md. 2014).......................................................10

*EEOC v. Pitre*,
   908 F. Supp. 2d at 1178-79...............................................................19

*EEOC v. PMT Corp.*,
   124 F. Supp.3d 904 (D. Min. 2015)...................................10, 13, 19, 20

*EEOC v. Signal Int'l, LLC,*
    37 F. Supp. 3d 814 (E.D. La. Dec. 4, 2013) ...................................................10

*Ellingson Timber Co. v. Great N. Ry. Co.,*
    424 F.2d 497 (9th Cir. 1970) ..............................................................10, 13

*Ellis v. Costco Wholesale Corp.,*
    285 F.R.D. 492 (N.D. Cal. 2012)...........................................................8, 20, 21

*Gen. Patent Corp. v. Hayes Microcomputer,*
    No. SA-CV-97-429, 1997 WL 1051899 (C.D. Cal. Oct. 20, 1997)...................15

*Gross v. FBL Fin. Servs., Inc.,*
    557 U.S. 167 (2009)..........................................................................10

*Heath v. Google LLC,*
    345 F. Supp. 3d 1152 (N.D. Cal. 2018) ..................................................10, 14

*Hyman v. First Union Corp.,*
    980 F. Supp. 46 (D.C. C. 1997) ...........................................................9, 10

*International Brotherhood of Teamsters v. United States,*
    431 U.S. 324 (1977).................................................................*passim*

*Lorillard v. Pons,*
    434 U.S. 575 (1978)..........................................................................21

*McDonnell Douglas Corp. v. Green,*
    411 U.S. 792 (1973)........................................................................8, 9

*Moses v. K-Mart Corp.,*
    905 F. Supp. 1054 (S.D. Fla. 1995), *aff'd sub nom. Moses v. K-Mart Corp., Inc.*, 119 F.3d 10 (11th Cir. 1997)...................................22

*Rees v. Souza's Milk Transp. Co.,*
    2008 WL 276574 (E.D. Cal. Jan. 30, 2008) ...............................................15

*Richardson v. Byrd,*
    709 F.2d 1016 (5th Cir. 1938) ..............................................................8

*Rivera v. NIBCO, Inc.,*
    364 F.3d 1057 (9th Cir. 2004) ..............................................................13

*Robinson v. Metro-North Commuter R.R. Co.*,
  267 F.3d 147 (2d Cir. 2001) ....................................................8, 11, 13

*Rodolico v. Unisys Corp.*,
  199 F.R.D. 468 (E.D.N.Y. 2001)................................................10

*Serrano v. Cintas Corp.*,
  699 F.3d 884 (6th Cir. 2012) ....................................................7, 8, 9

*Sledge v. J.P. Stevens & Co., Inc.*,
  585 F.2d 625 (4th Cir. 1978) ....................................................18

*Thiessen v. Gen. Electric Capital Corp.*,
  267 F.3d 1095 (10th Cir. 2001) *cert denied*, 536 U.S. 934 (2002) ............*passim*

*Thompson v. Weyerhaeuser Co.*,
  582 F.3d 1125 (10th Cir. 2009) ....................................................1, 10

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)................................................................12

**Statutes**

29 U.S.C. § 216................................................................................21

29 U.S.C. § 626(b) ..........................................................................21

Fed. R. Civ. P. 42(b) .........................................................................7


**Other Authorities**

9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2388 (3d ed. 2012)........................................................16

*Manual for Complex Litigation* § 32.45 (4th ed. 2004)......................................9, 15

Advisory Committee Note to Fed. R. Civ. P. 42(b) (1966)....................................11

## I.    INTRODUCTION

Plaintiff U.S. Equal Employment Opportunity Commission ("EEOC") alleges that, since at least 2017, Defendant Meathead Movers, Inc. ("Meathead") has violated the Age Discrimination in Employment Act ("ADEA") by engaging in a companywide pattern or practice of age discrimination by its ongoing and intentional failure to recruit or hire qualified individuals in the protected age group (age forty (40) and older) ("PAG") into moving, packing, or customer service positions because of their age.  EEOC seeks lost earnings for all qualified persons in the PAG, whether presently known to the EEOC or to be identified through discovery, who were denied employment or deterred from applying for these positions due to Meathead's pattern or practice of age discrimination. EEOC also seeks liquidated damages and equitable and injunctive remedies.

The EEOC intends to prove its case using the two-stage framework articulated in *International Brotherhood of Teamsters v. United States*, 431 U.S. 324 (1977).  Under *Teamsters*, to establish an unlawful pattern or practice, the EEOC bears the initial burden of proving by a preponderance of the evidence that unlawful discrimination was Meathead's regular practice. *Id.* at 336. If the EEOC meets this heightened burden, and Meathead fails to demonstrate the "Government's proof is either inaccurate or insignificant," class members are presumed to have been injured by the discriminatory practice. *Id.* at 360-62.  To overcome the presumption of liability as to each member of the protected group, Meathead would then bear the burden of proving the individual was denied employment for a nondiscriminatory reason or otherwise not discriminated against. *Id*. at 362.

Bifurcation is consistent with the *Teamsters* model of proof for pattern-or-practice cases and well-suited to this ADEA pattern-or-practice case.  *See Thompson v. Weyerhaeuser Co.*, 582 F.3d 1125, 1128-29 (10th Cir. 2009) (courts apply *Teamsters* framework where ADEA plaintiff advances pattern-or-practice

theory and evidence to support its theory).  As this pattern-or-practice lawsuit implicates thousands of applicants, hundreds of hiring incidents, and likely hundreds of alleged victims of discrimination, the typical case management structure of individual and multi-party discrimination suits is not suitable. Bifurcation is the norm for managing pattern-or-practice discrimination cases like this one as it serves the interests of judicial economy and is most likely to result in the just and efficient adjudication of pattern-or-practice claims.  Given the *Teamsters* framework, the size and scope of this case, and the interests served by bifurcated proceedings under Rule 42(b), the EEOC moves for bifurcation of discovery and trial into two stages, Stage I (liability) and Stage II (damages).   For the reasons set forth below, the EEOC's motion to bifurcate trial and discovery in this action should be granted.

## II.    BACKGROUND

### a.  The Nature of the Claims

The EEOC's lawsuit alleges a pattern-or-practice of employment discrimination based on age.  On September 29, 2023, the EEOC filed this action against Meathead, a moving and storage company with six locations.  (ECF No. 1). The EEOC alleges that since at least 2017, Meathead has engaged in a pattern or practice of age discrimination in hiring, including recruitment and advertising, by intentionally failing to recruit or hire qualified individuals in the PAG into moving, packing, and customer service positions and deterring individuals in the PAG from applying, in violation of the ADEA, 29 U.S.C. §§ 621, *et seq*.  (*Id.*).  The EEOC seeks lost earnings for qualified individuals in the PAG denied employment into these positions due to age, liquidated damages in an equal amount for Meathead's willful violation of the ADEA, and injunctive and equitable remedies to remedy and prevent further ADEA violations.  (*Id*. at 11:8-28)

In line with *Teamsters*[1], the seminal case for the method of proof employed in pattern-or-practice cases, the EEOC intends to prove through statistical, anecdotal, direct, and circumstantial evidence that age discrimination in hiring, including recruitment and advertising, was Meathead's standard operating procedure, and that Meathead willfully violated the ADEA.

Based on applicant data Meathead provided to the EEOC prior to litigation, Meathead failed to hire persons in the PAG into moving, packing, and customer service positions at a statistically significant rate given the availabilities in the relevant labor pools.  For example, in 2021, Meathead's records reflect that it hired approximately 438 persons; just three, or 0.6%, were age 40 or older.  See Declaration of Trial Attorney Andrea Ringer ("Ringer Decl.") at ¶8.  Of approximately 419 persons hired into moving, packing, or customer service positions; just *one* was 40 or older, an even lower rate of 0.2%.  *Id.* at ¶9. Meathead's hiring records are similar for other years.  *Id.* at ¶10.  Because the EEOC alleges an ongoing pattern through today, these numbers represent a fraction of what EEOC's discovery, and its expert witness, will address.

---

[1] The *Teamsters* framework is particularly apropos given the parallels between this case and the facts in *Teamsters*.  There, the central claim was similar: the government alleged the employer's pattern or practice was failing to hire minorities into line driver positions. *Teamsters*, 431 U.S. at 329.  The government carried its burden of proof that discrimination was the employer's standard operating procedure via statistical evidence, bolstered by testimony of individuals recounting specific instances of discrimination.  *Id.* at 337-38.  The statistical evidence showed that fewer than 1% of line drivers were in the protected group, and most were hired only after litigation commenced.  *Id.* at 337.  The statistical evidence was assessed against the percentage of the protected groups in relevant geographic regions.  *Id.* at 337 n. 17.  Individual testimony reflected members of the protected group who sought line driver positions were ignored or given false information, or not considered or hired on the same basis as non-minorities.  *Id.* at 338.  The employer was unable to rebut the pattern or practice via evidence regarding its hiring policies or assertions that it hired the best qualified applicants. *Id.* at 342 n. 24.

The EEOC will bolster its statistical evidence with direct evidence of discriminatory intent, including evidence of hiring decisions made explicitly based on age and statements by Meathead's CEO that it hires young persons, and anecdotal evidence, including testimony and documentation showing qualified persons in the PAG were asked about their age during interviews, denied employment for subjective reasons related to their "culture fit," and that Meathead instead hired young, often less-qualified, persons.  Ringer Decl. at ¶14-17.

The EEOC estimates a class of at least 500, based on the limited applications provided during the EEOC's investigation.  All "qualified" applicants in the PAG who applied for moving, packing, or customer service positions at any of Meathead's six locations between 2017 and the present are in the putative class.[2]  Prior to litigation, Meathead provided the EEOC with paper applications for roughly two and a half years.  Ringer Decl. at ¶11.  As date of birth is not provided in employment applications, the age of applicants was not readily apparent for approximately 70% of the applicants.  *Id.* at ¶12.  Of the 30% with some age-related information, the EEOC identified at least 117 applicants in the PAG; many have since been confirmed as eligible based on qualifications.  *Id.* at ¶13.  Extrapolating from the percentage of applicants in the PAG out of the limited applications produced with age-related information suggests a putative class of over 1,000 applicants in the PAG from paper applications alone, before screening for qualifications.  Therefore, once Meathead produces electronic and paper applications for the entire time frame at issue (2017 to present), the EEOC expects the size of its putative class will grow substantially given the expected volume of electronic applications.

As in *Teamsters,* the EEOC must prove that discrimination was

---

[2] The EEOC also seeks relief for qualified individuals deterred from applying for moving, packing, and customer service positions due to Meathead's discriminatory recruitment and advertising.

Meathead's standard operating procedure; to do so, the EEOC expects that testimony by class members will be limited to those who can bring the "cold numbers convincingly to life," such as those who experienced discriminatory remarks. *See Teamsters*, 431 U.S. at 339. Accordingly, the EEOC intends to identify in its Rule 26(a) disclosures the identities of all persons presently known, including class members, whose testimony the EEOC expects to rely on to prove that Meathead engaged in a pattern or practice of age discrimination. However, Meathead currently seeks in discovery detailed information regarding every member of the putative class, and presumably intends to depose all these individuals whose identities the EEOC cannot even discover without complete applicant records.

### b. The EEOC's Proposed Bifurcation Order.

The EEOC proposes bifurcation of both trial and discovery into two discrete stages, with the scope of discovery in each stage limited to evidence that is relevant to the issues designated for fact-finding in that stage of the litigation.

The EEOC proposes that Stage I consist of discovery and trial on: (1) whether unlawful age discrimination was a regular policy or practice followed by Meathead ("liability"); (2) if so, whether Meathead's pattern or practice of age discrimination was "willful" thereby entitling class members to liquidated damages; and (3) affirmative defenses pleaded that are relevant to the foregoing class-wide issues. *See Teamsters*, 431 U.S. at 360. If the EEOC prevails in proving a pattern or practice of discrimination in Stage I, there will be a presumption in Stage II that each qualified member of the PAG denied employment was unlawfully discriminated against and entitled to relief. *See id.* at 362; *Thiessen v. Gen. Electric Capital Corp*., 267 F.3d 1095, 1106-07, n.7 (10th Cir. 2001) *cert denied*, 536 U.S. 934 (2002) (in stage two, ADEA plaintiffs are "entitled to a presumption that the employer had discriminated against them").

The EEOC proposes that Stage II consist of discovery and trial on: (a)

whether each individual class member was subjected to unlawful age discrimination in hiring, recruitment, or advertising, subject to any presumption of discrimination that may arise from the Stage I trial; and (b) issues of relief as to the individual victims. *See Teamsters*, 431 U.S. at 361-62. Stage II discovery focuses on a person-by-person entitlement to relief and the nature and quantum of such individual relief, including lost wages and benefits, mitigation, and other individual-specific relief. This framework delays much of the discovery specific to individual aggrieved members' circumstances and damages until after the Stage I trial. Discovery on these issues would likely include the circumstances, qualifications, and subsequent employment of each of the expected hundreds of people for whom the EEOC seeks relief, likely including depositions of each; discovery on the successful applicants hired for the various positions, and their relative qualifications; and depositions of numerous hiring managers for the various positions and for the entire time frame. It could also involve expert analysis, reports, and depositions concerning economic damages relative to the scores or hundreds of presumed victims.

The EEOC proposes that at the conclusion of the Stage I trial, if the jury concludes that Meathead engaged in a pattern or practice of discrimination, the Court issue appropriate injunctive relief and set a scheduling conference for Stage II. *See Teamsters*, 431 U.S. at 361. If at the end of Stage I, a jury finds the EEOC failed to show a pattern or practice of discrimination, the EEOC may proceed on individual claims of discrimination. *See Thiessen*, 267 F.3d at 1106 n.8 (citing *Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 878 (1984)).

## III.    LEGAL STANDARD

The Court has broad discretion to bifurcate discovery and trial pursuant to Rules 42(b) and 26 of the Federal Rules of Civil Procedure. *See Arthur Young & Co. v. U.S. Dist. Court*, 549 F.2d 686, 697 (9th Cir. 1977). The Court may order separate trials where bifurcation will further convenience for the court and the

parties, avoid prejudice, or promote efficiency or judicial economy.  Fed. R. Civ. P. 42(b).   The Court may also issue orders controlling the sequence and timing of discovery.  *EEOC v. Bass Pro Outdoor World, LLC*, 826 F.3d 791, 800 (5th Cir. 2016) ("Bifurcation of liability and damage is a common tool deployed by federal district courts  . . . [and] well within its powers under Rules 16 and 26.")

## IV.    THE COURT SHOULD BIFURCATE DISCOVERY AND TRIAL, WITH ALL CLASS ISSUES ADDRESSED IN STAGE I.

### a.   Bifurcation Is Necessary Given the Pattern-or-Practice Allegations.

Bifurcation of this public enforcement action is necessary given the applicable analysis and burdens of proof applied in pattern-or-practice cases.  *See Thiessen*, 267 F.3d at 1106.  Unlike the individual discrimination claim analysis, which focuses on specific employment decisions, the quintessential question in a pattern-or-practice case is whether there is "a pattern of discriminatory decisionmaking."  *Cooper*, 467 U.S. at 876.  To alleviate judicial burdens and complexities, the Supreme Court in *Teamsters* required a two-stage approach to trial, with the first stage resolving liability for the alleged pattern or practice, and the later stage determining the damages suffered by the individual class members. *Teamsters*, 431 U.S. at 360-62.  As a result, the plaintiff's burden in the first stage of a bifurcated pattern-or-practice case differs from the burden for obtaining individualized relief in the second stage.  *Serrano v. Cintas Corp.*, 699 F.3d 884 (6th Cir. 2012) (vacating summary judgment for individual and pattern-or-practice claims and explaining court's decision regarding application of the *Teamsters* bifurcation framework "matters greatly" given the prima facie case varies depending on the framework).

In the pattern-or-practice stage, the plaintiff must establish the employer engaged in a regular practice of unlawful discrimination, and once established, the burden reverts to the employer to demonstrate that the "Government's proof is

either inaccurate or insignificant." *Teamsters*, 431 U.S. at 360; *Thiessen*, 267 F.3d at 1106. "At the initial, 'liability' stage of a pattern-or-practice suit, the Government is not required to offer evidence that each person for whom it will ultimately seek relief was a victim of the employer's discriminatory policy. Its burden is to establish that such a policy existed." *Teamsters*, 431 U.S. at 360-61. If a defendant fails to meet its burden in rebuttal, the court may award prospective relief and individual victims are entitled to a presumption that "any particular employment decision, during the period in which the discriminatory policy was in force, was made in pursuit of that policy." *Id.* at 362; *see also Thiessen*, 267 F.3d at 1106 n.8; *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 159 (2d Cir. 2001) (presumption "substantially lessen[s] each class member's evidentiary burden relative to that which would be required" if proceeding under *McDonnell Douglas*[3]).

Notwithstanding the presumption decided in Stage I, the defendant maintains the opportunity in Stage II to prove that it did not subject individuals to discrimination and to challenge their entitlement to damages. *Teamsters*, 431 U.S. at 361; *see Richardson v. Byrd*, 709 F.2d 1016, 1021 (5th Cir. 1938); *Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492, 539 (N.D. Cal. 2012). "The second stage of a pattern or practice claim is essentially a series of individual lawsuits,

---

[3] The seminal case for the burden-shifting framework in individual discrimination cases is *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). It requires a plaintiff to first establish a prima facie case by presenting evidence that (1) the plaintiff is a member of a protected class; (2) the plaintiff was qualified for the job; (3) plaintiff suffered an adverse employment action; and (4) plaintiff was replaced by a person outside the protected class or treated differently from similarly situated non-protected employees. *See Serrano*, 699 F.3d at 893 (comparing *McDonnell Douglas* to *Teamsters* framework). Once a prima facie is shown, the burden shifts to the defendant to offer evidence of a legitimate, nondiscriminatory reason for its action. *Id.* If the defendant succeeds, the burden shifts back to the plaintiff to show the defendant's reason was untrue or pretext for discrimination. *Id.*

except that there is a shift of the burden of proof in the plaintiffs' favor." *Thiessen*, 267 F. 3d at 1106 n.7 (quoting Newberg on Class Actions § 4.17 (3d. ed. 1992)). If the plaintiff does not prevail in Stage I, the case proceeds as any other ADEA enforcement action.

Bifurcation of this pattern-or-practice case will ensure the proper burdens of proof are applied, affording individual claimants the presumption they are entitled to if the EEOC establishes a pattern or practice of discrimination. *See Craik v. Minn. State Univ. Bd*., 731 F.2d 465, 471 (8th Cir.1984) (magistrate erred in failing to apply Teamsters framework); *Hyman v. First Union Corp*., 980 F. Supp. 46, 50-52 (D.C. C. 1997) (denying motion for summary judgment as to individual claims as premature because motion was brought prior to completion of liability stage in ADEA pattern-or-practice case). Accordingly, the EEOC requests an order bifurcating discovery and trial between liability and damages.

### b. Pattern-or-Practice Employment Discrimination Cases Are Ordinarily Tried in Two Stages.

Pattern-or-practice employment discrimination litigation is routinely bifurcated into separate liability and remedial stages. *See Manual for Complex Litigation* § 32.45 (4th ed. 2004) . The Supreme Court has long endorsed the use of bifurcation in cases where a pattern or practice of discrimination is alleged. *See Teamsters*, 431 U.S. at 360-62. "Although *Teamsters* does not explicitly require a bifurcation of trials into two phases, it certainly suggests this approach." *EEOC v. Mavis Discount Tire, Inc*., 129 F. Supp.3d 90, 119 (S.D.N.Y. 2015); *see also Serrano*, 699 F.3d at 893 ("[T]he *Teamsters* framework contemplates a bifurcation of proceedings that *McDonnell Douglas* does not."); *Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 458-59 (N.D. Cal. 1994) (according to leading treatises, most courts bifurcate employment discrimination class actions).

Since the *Teamsters* decision, federal courts presented with pattern-or-

practice allegations under the ADEA have applied the *Teamsters* framework.[4] *See Thompson v. Weyerhaeuser Co*., 582 F.3d 1125, 1131 (10th Cir. 2009); *Thiessen*, 267 F.3d at 1106 ("Pattern or practice cases are typically tried in two or more stages."); *Heath v. Google LLC*, 345 F. Supp. 3d 1152, 1167-68, 1177 (N.D. Cal. 2018) (agreeing with Tenth, Second, Fourth, Fifth, Seventh, and Eleventh Circuits that the *Teamsters* two-stage framework applies to ADEA class actions). In doing so, courts bifurcate liability and damages of pattern-or-practice cases brought under the ADEA. *See, e.g.*, *Rodolico v. Unisys Corp*., 199 F.R.D. 468, 482-84 (E.D.N.Y. 2001) (applying *Teamsters* framework in ADEA case and bifurcating action); *EEOC v. McDonnell Douglas Corp.*, 960 F. Supp. 203, 205 (E.D. Mo. 1996) (bifurcating trial of ADEA pattern-or-practice case and setting scheduling conference to begin discovery discussion); *Hyman*, 980 F. Supp. at 50-52 ("When plaintiffs rely on the burden shifting approach established in *Teamsters*, pattern or practice discrimination actions are generally bifurcated at trial into two parts…."); *EEOC v. Hillstone Rest. Grp., Inc*., No. 22CV3108JLRRWL, 2023 WL 5207988, at *3-6 (S.D.N.Y. Aug. 14, 2023) (bifurcating discovery in ADEA pattern-or-practice case; *EEOC v. Darden Restaurants, Inc*., No. 15-20561-CIV, 2016 WL 9488708 (S.D. Fla. May 20, 2016) (bifurcating discovery and trial in ADEA hiring case after EEOC discovered 150 claimants); *EEOC v. NEBCO Evans Distrib., Inc*., No. 8:CV96-00644, 1997 WL 416423 *2 (D. Neb. June 9, 1997) (bifurcating discovery and trial of ADEA pattern-or-practice case with 100 to 200 applicants in

---

[4] The application of the *Teamsters* framework in ADEA pattern-or-practice cases is unaffected by the Supreme Court's decision in *Gross v. FBL Fin. Servs., Inc*., 557 U.S. 167 (2009) that individual plaintiffs bear the burden of persuasion on "but for" causation. *Gross* involved individual disparate treatment, not a class action. Courts agree that *Gross* did not alter the applicability of the *Teamsters* paradigm to ADEA pattern-and-practice claims. *Heath*, 345 F.Supp.3d at 1168; *see also Thompson*, 582 F.3d at 1131; *EEOC v. PMT Corp*., 124 F. Supp.3d 904, 904 (D. Min. 2015).

protected group).

Federal courts likewise routinely bifurcate discovery in pattern-or-practice cases.  *See, e.g., Ellingson Timber Co. v. Great N. Ry. Co.,* 424 F.2d 497, 499 (9th Cir. 1970) (bifurcating discovery and trial); *EEOC v. Lawler Foods, Inc*., 128 F. Supp. 3d 972, 975 (S.D. Tex. 2015) (ordering bifurcated discovery over defendant's objection); *EEOC v. Signal Int'l, LLC,* 37 F. Supp. 3d 814, 820 (E.D. La. Dec. 4, 2013) (same); *PMT Corp*., 124 F. Supp.3d at (same); *EEOC v. Performance Food Grp., Inc*., 16 F. Supp. 3d 576, 578 (D. Md. 2014) (parties agreed to bifurcation of discovery and trial); *EEOC v. Dial Corp*., 156 F. Supp. 2d 926, 958 (N.D. Ill. 2001) (ordering bifurcated trial and discovery).

As explained in the advisory committee notes to Rule 42, "it is important that [bifurcation] be encouraged where experience has demonstrated its worth." Advisory Committee Note to Fed. R. Civ. P. 42(b) (1966).  As courts have recognized for decades, bifurcation of pattern-or-practice cases is the preferred method for case management.  For the reasons outlined herein, the EEOC's motion for bifurcation should be granted.

### c.  Bifurcation of Trial and Discovery Will Further Convenience and Efficiency and Avoid Prejudice.

Courts frequently order bifurcation of pattern-or-practice employment discrimination cases into a liability stage and a remedial stage due to the great savings of judicial and litigant time and resources, the efficiency which results from the procedure, and to reduce juror confusion.

### i.  Staged discovery and trial is more convenient and manageable.

Pattern-or-practice liability is a sufficiently narrow issue to resolve within a reasonable time and through a manageable discovery plan and trial. The focus of the Stage I trial, whether to the court or the jury, will frequently be on statistical evidence and expert testimony regarding liability for the alleged discriminatory pattern or practice. *See Teamsters*, 431 U.S. at 339. Likewise, direct evidence,

which is anticipated here, can be succinctly discovered and presented.

In Stage I, individual fact witnesses are limited to those whose testimony is relevant to the determination of pattern-or-practice liability.  This is a far smaller and more manageable number of Stage I witnesses than the hundreds of potential members of the PAG. "To the extent that evidence regarding specific instances of alleged discrimination is relevant during the liability stage, it simply provides 'texture' to the statistics."  *Robinson v. Metro-North Commuter R.R. Co*., 267 F.3d 147, 168 (2d Cir. 2001).

ii.  <u>Liability and damages are distinct separable issues.</u>

Bifurcation of liability and damages is beneficial because the issues are distinct and separable.  Courts consistently hold that where the plaintiff alleges a pattern or practice of employment discrimination, liability and remedy are separate and distinct issues.  *See Teamsters,* 431 U.S. at 360-61; *see also Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 366-67 (2011) (after establishing a pattern or practice, additional proceedings are usually necessary regarding individual relief.") (internal quotations omitted); *Cooper,* 467 U.S. at 876 ("While a finding of a pattern or practice of discrimination itself justifies an award of prospective relief to the class, additional proceedings are ordinarily required to determine the scope of individual relief for" class members); *see also EEOC v. McDonnell Douglas Corp*., 960 F. Supp. at 205 (explaining liability and remedial issues were "wholly distinct" and bifurcating trial in ADEA pattern-or-practice); *Lawler Foods, Inc*., 128 F. Supp. 3d at 975-76 (explaining discovery regarding class members "has almost nothing to do with deciding whether defendants have engaged in a pattern-or-practice of hiring discrimination…."). "[A]t the liability stage of a pattern-or-practice trial the focus often will not be on individual hiring decisions, but on a pattern of

discriminatory decisionmaking." *Teamsters,* 431 U.S. at 360, n. 46.[5]  Once liability is determined, issues of individual remedies are addressed.  *Id.* at 361. Here, "because the issues of liability and damages" "are readily severable," bifurcation is both convenient and appropriate.  *Bates v. United Parcel Serv.*, 204 F.R.D. 440, 449 (N.D. Cal. 2001); *see also Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1070 (9th Cir. 2004) (stating that separating liability and damages was consistent with prior cases); *Arthur Young & Co.*, 549 F.2d at 693-94, 697 (bifurcation of class and damage issues was proper given the class and damages issue were distinct).

### iii.  Bifurcation defers costly individual discovery until after liability determination.

Bifurcation will also save time and resources by streamlining the litigation. Bifurcation allows the parties to focus on the threshold issue of liability before addressing hundreds of individualized issues and will avoid prejudice that is likely to occur – in the form of jury confusion and delay – absent bifurcation.  *See Bates v. United Parcel Serv.*, 204 F.R.D. 440, 449 (N.D. Cal. 2001) ("[R]educing the types and amount of evidence to be produced in each phase of trial would promote judicial economy and reduce the risk of confusion.").

First, bifurcation simplifies the issues in each stage.  By "litigating the pattern or practice case" first, it "reduce[s] the range of issues in dispute and promote[s] judicial economy." *Robinson*, 267 F.3d at 168.  If the EEOC shows a pattern or practice in Stage I, a presumption of discrimination applies, simplifying

---

[5]    Evidence presented during the liability stage of a pattern-or-practice case generally includes statistical evidence, evidence concerning the defendant's employment practices, and anecdotal evidence from witnesses. *Teamsters,* 431 U.S. at 337-39.  These witnesses may include Meathead's current and former employees as well as applicants who sought employment with Meathead. *See id.* at 339 ("The individuals who testified about their personal experiences with the company brought the cold numbers convincingly to life.").

the issues to be determined in Stage II.  The focus is on the employer's practices, not hundreds of hiring decisions.  If none of the discovery is bifurcated, however, discovery for all claimants and all possible individual and pattern-or-practice claims would need to occur prior to trial, with no opportunity for a tailored approach based on narrowed issues.  This will require significantly more time and expense prior to trial.

Second, bifurcated discovery is a logical corollary to the *Teamsters* framework because it defers extensive, expensive, and potentially unnecessary discovery proceedings until after "resolution of potentially dispositive preliminary issues."  *Ellingson Timber*, 424 F.2d at 499; *PMT Corp.,* 124 F. Supp. 3d at 912 ("Phased discovery … appears to be a natural correlation to the *Teamsters* framework, focusing first on issues that are germane to the class as a whole and then, if necessary, focusing on individual circumstances."); *NEBCO Evans Distrib., Inc*., 1997 WL 416423 *2 (bifurcating discovery of ADEA action and explaining that "[b]y limiting the scope of the first phase to liability, there is no need to conduct extensive discovery relating to the individual applicants' damages until the need for such evidence has proved necessary.").  Here, the EEOC's pattern-or-practice evidence is properly considered separate from the claims for a large class of individuals injured by a single policy or course of conduct. Testimony regarding every class member and every individual hiring decision would largely be repetitive and focused on their interest in employment at Meathead, their qualifications, and damages, including mitigation.  Much of this individualized discovery will not resolve the key liability question: causation between the denial of employment and their age.  The proper focus should be on whether Meathead engaged in a pattern or practice of discrimination, such that denial of employment to older applicants is presumed to be discriminatory.

Courts agree that bifurcation of liability and individual remedial issues is appropriate where, as here, EEOC alleges that a large class of claimants has been

injured by a single policy or course of conduct, but individual remedies for those aggrieved individuals will differ.  *See, e.g.*, *Arthur Young & Co.*, 549 F.2d at 697 ("In cases of the magnitude of these, we find it permissible to separate the individual damage issues from trial of the class issues. . . ."); *Beck v. Boeing Co.*, 60 F. App'x 38, 40 (9th Cir. 2003) (where plaintiff alleges pattern or practice of discrimination, "questions about systemic disparate treatment should be decided first"); *Heath*, 345 F. Supp. 3d at 1167-68 (holding that "judicial economy [was] best served by adjudicating the approximately 265 individual claims together under the *Teamsters* framework"). The Federal Judicial Center's Manual For Complex Litigation likewise recommends deferral of class member discovery until after the determination of liability in private class actions, providing the following guidance:

> In some cases, limited discovery from class members may be conducted in a bifurcated case in the liability phase of the pretrial proceedings, with any remaining discovery deferred. Each party ordinarily should be permitted to depose any class member whom the other party plans to call as a witness. Discovery of a class member whose employment history will be used as evidence to show the existence (or nonexistence) of the alleged discrimination may also be appropriate.

*Id.* at § 32.436 (4th ed. 2004).

At this stage, "considerations of economy and efficiency weigh heavily in favor of postponing discovery" regarding "eligibility of individual class members" and "in what amounts" until Stage II.  *Lawler Foods, Inc.*, 128 F. Supp. 3d at 975. By bifurcating both discovery and trial, as EEOC requests here, neither the Court – nor the parties – will need to address individual remedial issues for hundreds of aggrieved persons until Meathead's liability for the alleged pattern or practice has been determined in Stage I.  *See Teamsters*, 431 U.S. at 361.  This includes issues related to the reason for the aggrieved individual's non-selection, the individual's lost wages and benefits and mitigation efforts.  *See id.* at 359 & n.45, 361.

iv.  <u>Bifurcation increases likelihood of settlement after Stage I.</u>

A determination regarding pattern-or-practice liability usually postures the case for settlement, obviating the need for extensive discovery and further proceedings regarding the class members. Courts and commentators have recognized this increased possibility of settlement as a factor favoring bifurcation. *See Rees v. Souza's Milk Transp. Co.*, 2008 WL 276574, at *1 (E.D. Cal. Jan. 30, 2008) (ordering bifurcation where determination of liability issues "is likely to facilitate a meaningful settlement discussion"); *Gen. Patent Corp. v. Hayes Microcomputer*, No. SA-CV-97-429, 1997 WL 1051899, at *2 (C.D. Cal. Oct. 20, 1997) ("It is because this court believes resolution of these initial claims will be either dispositive, or likely lead to settlement, that bifurcation is proper."); *see also Amoco Oil Co. v. Borden, Inc.*, 889 F.2d 664, 667-68 (5th Cir. 1989) (bifurcation promotes efficiency "by potentially hastening remedial action or settlement discussions once liability is determined."); 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2388 (3d ed. 2012) ("If a single issue could be dispositive of the case or is likely to lead the parties to negotiate a settlement, and resolution of it might make it unnecessary to try the other issues in the litigation, separate trial of that issue may be desirable to save the time of the court and reduce the expenses of the parties."). By bifurcating proceedings, the Court would increase the odds that the parties resolve the matter before even beginning the lengthy and expensive process of Stage II discovery, motion practice, and trial.

> v. Bifurcation will better ensure just adjudication by preventing jury confusion and increasing judicial economy.

Separate proceedings are more likely to produce a just result. If discovery and trial are not bifurcated, the case will be more resource-draining for the parties, complicated for the Court to manage, and difficult for the jury to comprehend.

First, because bifurcation would simplify discovery and the initial trial on the issue of liability, a just result is more likely. The EEOC's burden would be "to

establish by a preponderance of the evidence that . . . discrimination was the company's standard operating procedure the regular rather than the unusual practice." *Teamsters*, 431 U.S. at 336.  In support of its case, the EEOC would proffer statistical evidence and related expert testimony, the testimony of Meathead's current and former management personnel, testimony of a limited number of job applicants who were age 40 or older during the relevant time period, and documentary and other evidence.  The burden would then shift to Meathead "to defeat the prima facie showing of a pattern or practice by demonstrating that the Government's proof is either inaccurate or insignificant." *Id.*

A traditional case structure in this matter would be more protracted, unwieldy, and delayed.  The parties will have to conduct discovery and litigate issues regarding *both* Meathead's employment practices during the relevant period *and* the specific facts and circumstances of potentially hundreds of aggrieved individuals.  The determination of individual liability and remedial issues for a class of over 100 is complex and time-consuming.  All potential victims of the pattern or practice of discrimination would need to be identified and likely be deposed regarding their qualifications and monetary losses, including mitigation. This would necessitate Meathead to put on individualized proof as to its contentions that each of the hundreds of applicants was not discriminated against on the basis of age, and the EEOC would need to take depositions concerning the circumstances surrounding each denial of employment.  *See Teamsters*, 431 U.S. at 362.  Such depositions are time-consuming and expensive for both parties.  Many of those depositions would not be necessary if a jury decided in a Stage I trial that a pattern or practice did, or did not, exist. Furthermore, the un-bifurcated trial itself would almost certainly require several months, given the testimony of every alleged victim.  Such a long trial would make it significantly more difficult to empanel a jury and would also impose a greater burden on jurors.

The trial of pattern-or-practice liability described above should not be

complicated by testimony and legal instructions regarding issues pertinent only to the individual claimants. Given the amount of discovery and trial time required, a unified discovery period and trial on liability and relief together is likely to produce an unduly burdensome proceeding for the parties, the Court, and the jury.

Second, bifurcation is necessary to avoid jury confusion. A unified trial on both liability for a pattern or practice of discrimination and individual-specific relief would force jurors to simultaneously understand instructions regarding the burden shifting framework of *Teamsters* while also evaluating evidence pertaining to individual damages such as back pay, mitigation of damages, qualification for jobs, individual hiring decisions, and other individual circumstances. *See Arnold*, 158 F.R.D. at 459 (concluding "that a unitary trial in which fact issues pertaining to both liability and class damages were combined would be substantially more complicated than a bifurcated trial, and would consequently increase the risk of jury misunderstanding."); *EEOC v. Dial Corp.,* 259 F. Supp. 2d 710, 712 (N.D. Ill. 2003) (noting "the impracticality of using a single jury for the determination of the existence of a pattern or practice, on the one hand, and the awarding of individual damages to individual claimants, on the other"); *EEOC v. Celadon Trucking Services, Inc.*, No. 1:12-CV-0275, 2013 WL 1701074 at *1 (S.D. Ind. Apr. 18, 2013) ("[P]resenting evidence of damages for over 100 class members to a jury before there is a finding of liability is putting the cart before the horse and may distract the jury from making its antecedent determination of liability.") (internal quotation omitted).

This type of jury confusion, and resulting injury to the interest of just adjudication, is well-illustrated by *Sledge v. J.P. Stevens & Co., Inc.*, 585 F.2d 625 (4th Cir. 1978), a bench trial in which the Fourth Circuit reversed the district court's denial of back pay relief to individual class members who testified at the liability stage of trial because the district court failed to accord proper weight to the presumption of discrimination that arose from the liability determination. *Id.* at

637-43.  Given the outcome in *Sledge*, where the district judge was the fact finder, the potential for such error in the absence of bifurcation is magnified when a jury of laypersons must concurrently parse through the complexities of liability and damages.  In a single trial, an ordinary jury's ability to understand and correctly apply these shifting burdens and responsibilities, to recall and evaluate vast amounts of evidence regarding both liability and individual remedies issues, and to appropriately compartmentalize their deliberations would be compromised.  Rule 42(b) authorizes this Court to prevent such confusion by bifurcating proceedings between liability and damages.

Bifurcation would alleviate many if not all of these time-consuming and burdensome steps.  *See Lawler Foods, Inc.,* 128 F. Supp. 3d at 974 ("Unlimited discovery into the circumstances of each rejected applicant's claim for damages is certain to be very costly and time-consuming.  It may also turn out to be entirely wasteful and unnecessary should the EEOC's pattern-or-practice evidence ultimately fall short…").  Therefore, because bifurcation could obviate the inefficiency and expense discussed herein and promote a more just result, the EEOC's motion should be granted.  *See, e.g., PMT Corp.*, 124 F. Supp. 3d at 916 (reasoning that in a hiring pattern-or-practice case, "the narrowed focus of the first phase on class-wide issues [indicated that] engaging in discovery with respect to each potential class member is inefficient and unnecessary").

### vi.  Bifurcation will not prejudice Meathead.

Bifurcation will not impede Meathead's ability to defend itself in this litigation and, as such, granting EEOC's motion will not prejudice Meathead.  In Stage I, EEOC must bear the higher burden of proving the existence of a pattern or practice of age discrimination.  *Teamsters,* 431 U.S. at 360.  Although Meathead is not permitted to attack individual applicants' eligibility for relief in Stage I, the company would be able to offer evidence to attempt to demonstrate that EEOC's proof is "inaccurate or insignificant."  *See Teamsters,* 431 U.S. at 360 & n. 46

("The employer's defense must, of course, be designed to meet the prima facie case of the Government. … In such cases, the employer's burden is to provide a nondiscriminatory explanation for the apparently discriminatory result."); *EEOC v. Pitre,* 908 F. Supp. 2d at 1178-79 (because employer would be able to present evidence to rebut EEOC's prima facie case under *Teamsters*, its right to present defenses would not be prejudiced by bifurcation).  Meathead need not look any further than its own applicant records and other evidence of its employment practices to competently respond to the EEOC's pattern-or-practice claim. Meathead can also put on testimony from current and former employees about its hiring practices.  And Meathead can challenge the EEOC's statistical analysis via expert testimony.  *Accord PMT Corp.,* 124 F. Supp. 3d at 914 (noting that the bifurcation order left defendant free to challenge EEOC's statistical evidence based on number of decisions made during relevant period, sample size, qualifications of applicant pool, and corporate witnesses to contradict or undermine witnesses presented by EEOC).

Moreover, bifurcation as proposed here preserves Meathead's ability to present individualized defenses with respect to each aggrieved person during Stage II, when remedial issues will be adjudicated.  *See Teamsters,* 431 U.S. at 359, n. 45; *Ellis*, 285 F.R.D. at 539 (N.D. Cal. 2012) (noting that employer would have opportunity to present individualized defenses with respect to each class member during Stage II of gender pattern-or-practice case).

Finally, courts have repeatedly rejected the prospect that bifurcating proceedings in pattern-or-practice cases runs afoul of the Seventh Amendment or due process.  The liability and damages issues are readily separable in this ADEA pattern-or-practice case.  *See Arthur Young & Co.*, 549 F.2d at 693-94, 697 (holding that bifurcation of class and damage issues does not contravene the Seventh Amendment given the individual defenses will not defeat the "claims of all or many of the class members" and are "distinct from the class issues", and

damages are a "discrete aspect of the case as a whole" such that a jury need not
decide those issues until liability is determined); *EEOC v. McDonnell Douglas
Corp.*, 960 F. Supp. 203 (E.D. Mo. 1996) (holding that, although facts in Stages I
and II of ADEA pattern or practice case may overlap, the issues determined in
Stages I and II would be distinct and therefore raise no Seventh Amendment
concern); *Nebco Evans Distrib., Inc.*, 1997 WL 416423, at *2 ("It is
constitutionally permissible for separate juries to hear the two phases of a
bifurcated trial") (citation omitted).

Because bifurcation will not prejudice Meathead's ability to defend itself in
this litigation, EEOC's motion should be granted.

### d.  A Finding of a Pattern or Practice of Discrimination Justifies an Award of Prospective Relief.

Bifurcated proceedings would also most efficiently serve the public interest.
Unlike private lawsuits, government enforcement actions are designed to stop
unlawful employment practices and to secure compliance from the employer.

Under the *Teamsters* framework, if EEOC establishes a prima facie case that
Meathead has engaged in a pattern or practice of discrimination, and Meathead is
unable to rebut EEOC's evidence, the "court may then conclude that a violation
has occurred and determine the appropriate remedy."  *Teamsters,* 431 U.S. at 361
("Without any further evidence from the Government, a court's finding of a pattern
or practice justifies an award of prospective relief."); *see also Beck v. Boeing Co.,*
60 F. App'x 38, 39 (9th Cir. 2003) ("If there is a finding that [the employer]
engaged in class-wide discrimination, the district court may award at least
declaratory and injunctive relief.").  Thus, bifurcation permits the Court, prior to
hearing evidence related to remedial issues, to fashion appropriate injunctive relief
targeted at ending the discriminatory practice.  *See Ellis,* 285 F.R.D. at 505 ("If
Plaintiffs prevail on either claim, the Court could fashion classwide injunctive
relief.").  In this way, bifurcation furthers the remedial purposes of the ADEA by

permitting the Court to enjoin discriminatory practices earlier in the proceedings and prevent further harm to older applicants. *See Bean v. Crocker Nat. Bank*, 600 F.2d 754, 759 (9th Cir. 1979) (interpreting ADEA based on its "broad remedial purposes of prohibiting arbitrary age discrimination" and ensuring older persons are hired "based on their ability rather than age").

###### e. Liability for Liquidated Damages Should Be Addressed in Stage I.

The ADEA makes liquidated damages available for "willful violations" of the ADEA. 29 U.S.C. § 626(b); *see* 29 U.S.C. § 216 (FLSA remedies provision); *Lorillard v. Pons*, 434 U.S. 575, 581 (1978). A violation is considered "willful" if the employer "'knew or showed reckless disregard' for whether the ADEA prohibited its conduct." *Cassino v. Reichhold Chems., Inc.*, 817 F.2d 1338, 1348 (9th Cir. 1987). Similar to punitive damages, liquidated damages are punitive in nature and serve to deter future misconduct. *Criswell v. Western Airlines, Inc.*, 709 F.2d 544, 556 (9th Cir. 1983). Unlike punitive damages, upon a finding of willfulness, liquidated damages are an additional amount equal to the wages and benefits awarded. *Id.* at 1348. Evidence of intentional discrimination can be used to show willfulness. *EEOC v. Pape Lift, Inc.*, 115 F.3d 676, 681 (9th Cir.1997).

Trying liquidated damages during the liability stage places the issue of willfulness before the jury at the time it is best able to determine it—when it hears the evidence of class-wide discrimination and makes the pattern-or-practice finding. The evidence EEOC will present in support of its claim for liquidated damages will be virtually identical to the evidence EEOC will present to prove that Meathead engaged in a pattern or practice of intentional discrimination. In deciding the issue of liability for liquidated damages, the jury may rely on the same evidence presented in the Stage I trial, such as statistical analyses, anecdotal evidence, and any other admissible evidence from which the jury may infer both Meathead's discriminatory intent and that it knew or showed reckless disregard for whether its conduct was prohibited by the ADEA. Given the overlapping

evidence, courts that have considered this issue have included liquidated damages in the liability stage when bifurcating ADEA cases. *See, e.g.*, *EEOC v. Board of Regents of the University of Wisconsin System*, 288 F.3d 296, 299 (7th Cir. 2002) (liquidated damages included during liability stage where trial bifurcated between liability and damages); *Moses v. K-Mart Corp.*, 905 F. Supp. 1054, 1058 (S.D. Fla. 1995), *aff'd sub nom. Moses v. K-Mart Corp., Inc.*, 119 F.3d 10 (11th Cir. 1997) (jury found the employer acted willfully during liability stage, and the jury was instructed to award liquidated damages during damages stage); *EEOC v. Hillstone Rest. Grp., Inc.*, No. 22CV3108JLRRWL, 2023 WL 5207988, at *5-6 (S.D.N.Y. Aug. 14, 2023) (because willfulness focuses on the employer's conduct and state of mind, which overlaps with the liability issues, efficiency, economy and common sense warrant including evidence of intent, knowledge or reckless disregard regarding age discrimination in Stage 1 of discovery).

Thus, because the evidence needed to establish the availability of liquidated damages will inevitably overlap with the evidence used to establish liability, determining liquidated damages in Stage I promotes judicial economy. *Cf. Barefield v. Chevron, U.S.A., Inc.*, No. C 86-2427 TEH, 1988 U.S. Dist. LEXIS 15816, 16* (N.D. Cal. Dec. 6, 1988) ("The judicial economy to be gained by resolving this potentially repetitive issue at one time is plain."). For these reasons, EEOC submits that the availability of liquidated damages should be determined in Stage I while the amount of liquidated damages may be determined in Stage II.

## V.    CONCLUSION

Because bifurcation of this ADEA pattern-or-practice enforcement action is necessary, convenient, will increase efficiency, aid judicial economy, and avoid prejudice to the parties and jury confusion, EEOC's motion should be granted. A pattern-or-practice determination must be made before individual relief is considered to determine whether a presumption applies. For the reasons set forth above, this Court should bifurcate discovery and trial in this litigation according to

the *Teamsters* framework, into Stage I and Stage II as follows:

Stage I (Liability): Stage I of discovery shall include information relevant to (1) whether Meathead has engaged in a pattern or practice of age discrimination with respect to hiring, including recruitment and advertising; (2) if so, whether Meathead's pattern or practice of discrimination was willful; and (3) if a pattern or practice of discrimination is proved, whether injunctive relief is appropriate. For example, discovery may include information regarding Meathead's policies and procedures, job advertisements and descriptions, applicant records, records of the hiring and selection process, statements by Meathead representatives, and testimony by lay and expert witnesses with knowledge relevant to the pattern or practice claim and expert testimony.

After Stage I of discovery ends, a jury or the court shall consider these issues in the Stage I trial. Following the Stage I trial, the Court shall award prospective relief if appropriate and set a scheduling conference regarding Stage II.

Stage II (Individual-specific issues): Stage II of discovery shall include information relevant to (1) whether individual class members were deterred from applying or denied employment based on their age being 40 or older (with or without the presumption of discrimination, depending on the outcome of Stage I); and (2) if so, what damages are owed to individual class members (including liquidated damages award). After Stage II of discovery ends, a separate jury shall consider these issues in the Stage II trial.

Dated: March 28, 2024              Respectfully submitted,

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

By:   /s/ *Andrea E. Ringer*
      Andrea E. Ringer
      Trial Attorney

## **L.R. 11-6.2 Certificate of Compliance.**

Pursuant to L.R. 11-6.2, the undersigned, counsel of record for Plaintiff EEOC, certifies that the Memorandum of Points and Authorities in Support of Plaintiff EEOC's Motion for Bifurcation of Discovery and Trial contains 24 pages, which complies with the page limit set by the Standing Order for Cases Assigned to Judge Dale S. Fischer, dated January 17, 2024 (ECF No. 15).

Dated:  March 28, 2024                    Respectfully submitted,

                                        U.S. EQUAL EMPLOYMENT
                                        OPPORTUNITY COMMISSION

                             By:    /s/ *Andrea Ringer*
                                    Andrea Ringer
                                    Trial Attorney