Anna Y. Park, SBN 164242
anna.park@eeoc.gov
Nakkisa Akhavan, SBN 236260
nakkisa.akhavan@eeoc.gov
Taylor Markey, SBN 319557
taylor.markey@eeoc.gov
Andrea E. Ringer, SBN 307315
andrea.ringer@eeoc.gov
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
255 East Temple Street, Fourth Floor
Los Angeles, CA 90012
Telephone:  (213)f5 785-3080
Facsimile:  (213) 894-1301

Gaganjyot Sandhu, CA SBN 327379
gaganjyot.sandhu@eeoc.gov
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
555 W. Beech Street, Suite 504
San Diego, CA 92101
Telephone:  (213) 785-1614
Facsimile:  (213) 894-1301

Attorneys for Plaintiff U.S. EEOC

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, <br><br> Plaintiff, <br><br> vs. <br><br> MEATHEAD MOVERS, INC., and DOES 1-10, inclusive, <br><br> Defendants. | Case No.: 2:23-cv-08177-DSF-AGRx <br><br> **PLAINTIFF EEOC'S REPLY IN SUPPORT OF MOTION FOR BIFURCATION OF DISCOVERY & TRIAL** <br><br> Hearing: April 29, 2024 at 1:30 PM <br><br> Honorable Dale S. Fischer <br> United States District Judge |

# **TABLE OF CONTENTS**

**I.   INTRODUCTION** ........................................................................................ 1

**II.   THE FACTS CORRECTED** ....................................................................... 2

**III.  ARGUMENT** ............................................................................................. 4

    a.  The EEOC's Theory is Intentional Discrimination in Hiring. ................. 4

    b.  Bifurcation is Warranted in Pattern-or-Practice Cases. .......................... 6

    c.  The Pattern-or-Practice Method of Proof is Available to ADEA. ........... 6

    d.  Bifurcation is More Efficient for Pattern-or-Practice Framework. .......... 9

    e.  Bifurcation Promotes Settlement and Limits Juror Confusion. ............. 10

    f.  Meathead will not be Prejudiced and Bifurcation is not Premature ....... 11

    g.  Meathead's Seventh Amendment Argument Fails ................................. 12

**IV.  CONCLUSION** ........................................................................................ 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bostock v. Clayton Cnty., Ga.*,
    590 U.S. 644 (2020)...................................................................8

*Costa v. Desert Palace, Inc.*,
    299 F.3d 838 (9th Cir. 2002), *aff'd*, 539 U.S. 90 (2003)........................8

*Desert Palace, Inc. v. Costa*,
    539 U.S. 90 (2003)...................................................................7

*Doyle v. City of Medford*,
    512 F. App'x 680 (9th Cir. 2013)..................................................4

*EEOC v. Bass Pro Outdoor World, L.L.C.*,
    826 F.3d 791 (5th Cir. 2016).......................................................7

*Gifford v. Atchison, Topeka and Santa Fe Ry. Co.*,
    685 F.2d 1149 (9th Cir.1982).....................................................10

*Gross v. FBL Fin. Servs., Inc.*,
    557 U.S. 167 (2009)...............................................................7, 8

*Heath v. Google LLC*,
    345 F. Supp. 3d 1152 (N.D. Cal. 2018)..........................................5, 8

*Int'l Bhd. of Teamsters v. United States*,
    431 U.S. 324 (1977).........................................................1, 6, 8, 9

*Jones v. Okla. City Pub. Sch.*,
    617 F.3d 1273 (10th Cir. 2010)...................................................7

*McKennon v. Nashville Banner Publ'g Co.*,
    513 U.S. 352 (1995)...............................................................5

*Meacham v. Knolls Atomic Power Lab'y*,
    554 U.S. 84 (2008)................................................................5

*Robinson v. Metro–N. Commuter R.R. Co.*,
    267 F.3d 147 (2d Cir. 2001)..............................................9, 10, 11

*Shelley v. Geren*,
   666 F.3d 599 (9th Cir. 2012) ........................................................... 8

*Smith v. City of Jackson*,
   544 U.S. 228 (2005) ........................................................................ 5

*Teutscher v. Woodson*,
   835 F.3d 936 (9th Cir. 2016) .......................................................... 12

*Tex. Dept. of Cmty. Affairs v. Burdine*,
   450 U.S. 248 (1981) ........................................................................ 8

*Thompson v. The Weyhauser Corp.*,
   582, F3d. 1125 (10th Cir. 2009) ...................................................... 8

*Thiessen v. Gen. Elec. Capital Corp.*,
   267 F.3d 1095 (10th Cir. 2001) ..................................................... 5, 6

*W. Air Lines, Inc. v. Criswell*,
   472 U.S. 400 (1985) ........................................................................ 5

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ........................................................................ 7

*Westendorf v. W. Coast Contractors of Nev., Inc.*,
   712 F.3d 417 (9th Cir. 2013) ........................................................... 7

*Wynn v. Nat'l Broad. Co.*,
   234 F. Supp. 2d 1067 (C.D. Cal. 2002) .......................................... 10

**Statutes**

29 U.S.C. § 626(c)(1) ...................................................................... 11

29 U.S.C. § 626(c)(2) ...................................................................... 12

42 U.S.C. §2000e-5 .......................................................................... 7

**Other Authorities**

29 C.F.R. § 1625.7(d) ....................................................................... 5

1966 Advisory Com. Note to FRCP 42(b) ...................................... 6

## I.    INTRODUCTION

Meathead has long held itself out as a "student-athlete" moving company, composed of "young and energetic student-athletes." Its own hiring data shows it overwhelmingly hires people under 40, excluding older qualified workers. The EEOC's lawsuit asserts a single claim alleging a pattern-or-practice of disparate treatment in hiring and seeks bifurcation under the often-used *Teamsters* framework. Courts agree this method of proof is available to ADEA plaintiffs; there is no anti-bifurcation presumption in this jurisdiction.

Bifurcation is more efficient and less prejudicial than the alternative. Meathead seeks to distract from the primary issue – its own employment practices – and instead argues for a single "unified" trial trying to justify likely hundreds of individual hiring decisions when it rejected an older applicant in favor of one under 40. If discovery is not bifurcated, Meathead intends to subpoena records from and depose every class member to try to pick them off one-by-one, based on information it did not know when it rejected them. In contrast, the EEOC's proposal narrows the issues to properly focus on Meathead's hiring practices to determine whether age discrimination was "the company's standard operating procedure the regular rather than the unusual practice," supporting a rebuttable presumption of discrimination. *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336, 362 (1977).

Meathead is not prejudiced by bifurcation of discovery or trial. To defend each hiring decision, Meathead need look no further than its own application records and hiring personnel for the information it knew at the time it rejected older applicants. The EEOC has already disclosed 100+ rejected applicants in the protected age group ("PAG") and produced the majority of its investigative file, including hundreds of questionnaire responses from applicants. Bifurcation does not preclude Meathead from deposing witnesses. Rather, it incentivizes deposition of witnesses who can help prove or disprove that the hiring practices are discriminatory.

EEOC's practical motivation is to structure responsibly this large hiring case,

consistent with well-reasoned decisions that have endorsed bifurcation in pattern-or-practice cases. Meathead fails to provide input on how to structure this large case, defaulting to immediate, unstructured, unlimited discovery into the circumstances of likely hundreds of rejected applicants in the PAG, before producing applications needed to identify the class, and a unitary trial where one jury must evaluate pattern-or-practice evidence alongside individual hiring decisions for 100+ class members. In a pattern-or-practice case like this, where the first issue is whether a pattern or practice exists and individual claims are secondary, Meathead's approach defies common sense and would take much longer than the 8 months of discovery and 10-14 days of trial Meathead proposed. (ECF No. 27 at 27:13, 27-002). Accordingly, the Court should grant the EEOC's motion for bifurcation of discovery and trial.

## II.    THE FACTS CORRECTED

Meathead incorrectly contends that "the EEOC's factual support is entirely speculative at this stage." The EEOC's case is already well-supported by direct, statistical, and anecdotal evidence of discriminatory intent. Meathead's "founding principle is to support student-athletes working their way through college in pursuit of their own American dream, and that will never change." (Supplemental Declaration[1] of Andrea Ringer at ¶3 ("Decl."), Ex. 1). According to the CEO, Meathead was born from the founding brothers' "vision of young and energetic student athletes delivering a unique customer service experience." (Decl. ¶4, Ex. 2). "Since the beginning, Meathead Movers [has] allow[ed] young people to build their own work schedules around their athletic and academic commitments, allowing many to successfully work their way through college." (*Id.*)

---

[1] The EEOC included a declaration supporting its Motion to show what the EEOC intends to prove and is largely based on review of the investigative file. Supporting documents that Meathead suggests the EEOC publicly file are employee lists, copies of employment applications, and job interview notes, among other things. Much of this seems unnecessary for a bifurcation motion. However, in light of Meathead's objection, and in response to misstatements made in the Opposition, a supplemental declaration with supporting documents is attached.

Meathead's advertisements depict images of its young "student-athletes" and its employee and hiring data show it consistently hires young people to the exclusion of older qualified workers. For instance, in 2017, this "small business" employed over 700 people, and just 0.3% were 40 or older, according to Meathead. (Decl. ¶5, Ex. 3). Meathead's recruitment and hiring practices maintain its young workforce. It instructs employees to recruit at gyms, colleges, and places they "hang out" because employees know the "unique culture" at Meathead. (Decl. ¶6, Ex. 4). Older applicants' ages are often obvious given the application form seeks graduation dates and employment history. (Decl. ¶8, 15, Ex. 6). Interviewees are screened out with subjective questions like, "What is your spirit animal?" (Decl. ¶9, Ex. 7). Culture fit is required for hire, and young age is part of culture fit at Meathead. (Decl. ¶10, Ex. 8).

These practices are part and parcel of Meathead's founding vision and have resulted in it intentionally discriminating against actual and prospective applicants age 40 and older. Meathead seeks to distract and mislead the Court by arguing the EEOC is trying to avoid discovery, that the class size is speculative, and that after years of investigating, the EEOC has never tried to, or found, any aggrieved individuals. ***To set the record straight***: Before any discovery responses were due, the EEOC disclosed over 100 potential claimants (all applicants 40+ rejected by Meathead) and numerous anticipated witnesses (Meathead employees) to the alleged discrimination. (Decl. ¶ 14). The EEOC has already contacted hundreds of applicants, inquired regarding their qualifications and experience applying at Meathead, and produced such communications from its investigation to Meathead. (Decl. ¶12). The EEOC also produced 2575 pages from its investigative file, including over 340 questionnaire responses[2] from applicants. (Id. at ¶15, 12, Ex. 10). The remainder of its investigative file, the employment applications, will soon be produced. EEOC is in the process of determining whether another 660 applicants are also in the PAG. (Id. at ¶16). The

---

[2] Meathead's assertion that the EEOC has never contacted applicants is demonstrably false. (Opp. at 12). The EEOC never stated this. (Decl. ¶12-13)

foregoing information about applicants was gleaned from the limited applications provided in the investigation.[3]

While the exact class size is uncertain, its large size is not "speculative." EEOC estimated a class size of 500, not "thousands" as Meathead contends. (Opp. at 10.) The estimate is based on paper applications produced by Meathead in 2018. Meathead complains the EEOC has not identified the class members, but Meathead declined EEOC's request for early production of applications from which the EEOC will identify most of the class and has produced no applications in the litigation. EEOC promptly requested applications from 2017 to present. (Decl. ¶21). Regardless of bifurcation, however, the EEOC will promptly disclose the identities of all those it is able to identify as in the PAG and expects Meathead to do the same. To the extent Meathead has been "trying to get information about any alleged victims," the EEOC provided this information when Meathead requested it in 2022, before the litigation. (Opp at 11; Decl. ¶18).

Meathead has served discovery requests regarding individual applicants, and expressly stated its intent to subpoena every class member. (Decl. ¶19-20, Ex. 11).

## III.    ARGUMENT

### a.  The EEOC's Theory is Intentional Discrimination in Hiring.

Meathead repeatedly and incorrectly contends the EEOC has pled four theories of discrimination. The EEOC is the Plaintiff and asserts a single claim alleging Meathead maintains a pattern or practice of *intentional* age discrimination in hiring, including recruitment and advertising. Its claim is disparate treatment.

Meathead's "principal affirmative defense," "reasonable factor other than age" (RFOA), is not a defense to disparate treatment. Meathead contends this defense is fact-intensive such that bifurcation is improper. But the RFOA affirmative defense is not available in a disparate treatment case. *Doyle v. City of Medford*, 512 F. App'x 680,

---

[3] In 2018 Meathead produced about 4500 paper applications from 2016 to mid-2018. It has not produced electronic applications or applications after mid-2018.

681 n.1 (9th Cir. 2013); 29 C.F.R. § 1625.7(d). RFOA is a defense to disparate impact, which is not a claim here, and not a "safe harbor from liability" for disparate treatment. *Smith v. City of Jackson,* 544 U.S. 228, 238-39 (2005); *see Meacham v. Knolls Atomic Power Lab'y*, 554 U.S. 84, 102 (2008) (RFOA clause designed to leave leeway for decisions with effects that correlate with age). Disparate impact requires a neutral policy that has an adverse impact on a protected group. *See Meacham*, 554 U.S. at 101. Meathead's practices, such as the "Student Athlete Movers" moniker, are evidence of discriminatory animus not neutral practices. Meathead cannot create a disparate impact claim that has not been pled.

Even if the RFOA defense was available, Meathead's self-serving justifications for the young age of its employees, including that moving positions are physical jobs, are reminiscent of the intent behind the ADEA. *W. Air Lines, Inc. v. Criswell*, 472 U.S. 400, 409 (1985) (ADEA meant to address persistent age discrimination despite "wide range of individual physical ability regardless of age" such that many older persons "perform at levels equal or superior" to younger persons). Meathead's persistent belief that older workers are not as strong or not as interested in its jobs is based on the sort of unlawful stereotypes the ADEA was premised upon. Further, to the extent Meathead contends it needs discovery on applicants' qualifications, Meathead cannot justify failure to hire applicants based on information it did not have at the time it failed to hire them. *See McKennon v. Nashville Banner Publ'g Co*., 513 U.S. 352, 362 (1995) (refusing to bar recovery in ADEA action based on after-acquired evidence). Such information may be relevant to damages, but it is not a defense to liability.

Meathead's argument based on fact-intensive defenses does not distinguish this case from any other where courts granted bifurcation. *See, e.g., Thiessen v. Gen. Elec. Capital Corp.,* 267 F.3d 1095, 1107 (10th Cir. 2001) ("highly individualized" defenses not the "focal point until the second stage of trial"); *Heath v. Google LLC*, 345 F. Supp. 3d 1152, 1174-75 (N.D. Cal. 2018) (rejecting argument "individualized defenses would need to be tried in a phase one trial as well as its contention that Plaintiffs' claims are not suited for a *Teamsters* trial at all").

**b.  Bifurcation is Warranted in Pattern-or-Practice Cases.**

The EEOC agrees bifurcation of discovery and trial is not, and should not be, the norm in run-of-the-mill civil litigation.[4] Pattern-or-practice litigation is not the norm. *See Thiessen*, 267 F.3d at 1106. Pattern-or-practice hiring cases often involve dozens, hundreds, or thousands of persons not hired due to a common protected ground. Here, if the employer's standard operating procedure was to deter and reject older applicants because of age, it would be inefficient to first parse through every individual hiring decision before determining what the standard hiring practices are and whether they are discriminatory. Accordingly, courts across the country bifurcate pattern-or-practice employment cases because it furthers convenience, promotes judicial efficiency, and reduces juror confusion. Motion at 11-19. EEOC urges the Court to consider the weight of the authority, as "it is important that [bifurcation] be encouraged where experience has demonstrated its worth," as it has in pattern-or-practice employment cases. 1966 Advisory Com. Note to FRCP 42(b).

**c.  The Pattern-or-Practice Method of Proof is Available to ADEA.**

Meathead confuses theories of liability with methods of proof and gives short shrift to well-reasoned decisions analyzing the *Teamsters* framework, bifurcation, and the ADEA. The case law around this narrow issue has largely developed outside of the Ninth Circuit, but circuit and lower courts across the country agree, even post-*Gross,* the pattern-or-practice framework is available in ADEA cases.

Meathead asserts that, because Title VII contains a subsection authorizing pattern-or-practice claims (Section 707), and the ADEA does not, pattern-or-practice claims are not available here. However, Section 706 of Title VII does not include the term "pattern or practice," yet federal courts have long agreed the EEOC and private litigants may allege a pattern or practice under Section 706. 42 U.S.C. §2000e-5; *see,*

---

[4] Meathead misstates the standard for bifurcation in the Ninth Circuit. (Opp. at 13.) Neither *Hangarter* nor *Zahedi* conclude there is a high burden of proving the efficacy of bifurcation, and both are factually distinct.

*e.g.*, *EEOC v. Bass Pro Outdoor World, L.L.C.*, 826 F.3d 791, 800 (5th Cir. 2016);
*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 352 n.7, 366-67 (2011).

Meathead relies heavily on *Gross v. FBL Fin. Servs., Inc*., 557 U.S. 167 (2009)
for its argument that the EEOC cannot proceed via the pattern-or-practice framework.
*Gross* does not stand for such a broad proposition. *Gross* held that, unlike Title VII,
the ADEA does not authorize a "mixed-motive" discrimination claim. *Id.* at 175. The
*Gross* decision is grounded in the 1991 changes to Title VII adding "mixed-motive"
provisions. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 93-95 (2003). If an individual
proves a "mixed motive" violation under Section 2000e–2(m), and the employer
asserts the "mixed motive" affirmative defense under Section 2000e-5(g)(2)(B), the
burden shifts to the employer to prove "it would have taken the same action absent the
impermissible motivating factor." *Id.* at 94-95. Because Congress did not add similar
"mixed motive" provisions to the ADEA, the *Gross* court held the "mixed motive"
option was not available, and therefore "[t]he burden of persuasion does not shift to
the employer to show that *it would have taken the action regardless of age, even when
a plaintiff has produced some evidence that age was one motivating factor in that
decision*." *Gross,* 557 U.S. at 174-75, 180 (emphasis added). *Gross* did not change the
causation standard; it reaffirmed *Hazen Paper,* 507 U.S. 604, 610 (1993)*,* holding that
in ADEA cases, "but-for" causation is required. *Gross*, 557 U.S. at 176-77. ("[W]e
have previously held that the burden is allocated in this manner in ADEA cases.").[5]

While the Ninth Circuit has not squarely addressed the application of the
pattern-or-practice framework to ADEA actions, circuit courts and lower courts agree
that it does. *See* Mot. at 15-16. Post-*Gross*, courts agree the *Teamsters* framework still

---

[5] However, "but for" causation does not mean "sole cause." *Jones v. Okla. City Pub.
Sch.,* 617 F.3d 1273, 1276-78 (10th Cir. 2010) (rejecting argument that *Gross*
required age be the sole cause of the adverse action); *see also, Westendorf v. W.
Coast Contractors of Nev., Inc.*, 712 F.3d 417, 422 (9th Cir. 2013) (In Title VII
retaliation case, plaintiff "had to show that her protected conduct was a but-for
cause—but not necessarily the only cause—of her termination").

applies to the ADEA, distinguishing *Gross* as an *individual* disparate treatment case involving mixed-motive. *See Thompson v. The Weyhauser Corp*., 582, F3d. 1125, 1130 -31 (10th Cir. 2009) (*Gross* did not affect presumptions in *Teamsters*); *Heath,* 345 F. Supp. 3d at 1168, 1173 (rejecting argument *Gross* prohibited application of pattern-or-practice framework).

This is unaffected by *Shelley v. Geren*, which held that "nothing in *Gross* overruled [precedent] utilizing [the *McDonnell Douglas*] framework to decide summary judgment motions in ADEA cases," and then reaffirmed established precedent that the *McDonnell Douglas* framework does not apply at trial. *See* 666 F.3d 599, 607-08 (9th Cir. 2012) (citing *Costa v. Desert Palace, Inc*., 299 F.3d 838, 855 (9th Cir. 2002), *aff'd*, 539 U.S. 90 (2003)). In so holding, neither *Shelley* nor *Gross* alter the burden of persuasion for ADEA claims (i.e., non-mixed-motive); the burden of persuasion is the same for ADEA claims as it is for Title VII: it remains on the plaintiff at all times. *See Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981) ("ultimate burden of persuading the trier of fact" "remains at all times with the plaintiff"). *Gross'* requirement of "but-for causation" does not render the pattern-or-practice framework unavailable, especially given its functional equivalence to Title VII's "because of" requirement. *Bostock v. Clayton Cnty., Ga.*, 590 U.S. 644, 656 (2020) (citing *Nassar,* a Title VII retaliation case, and *Gross*).

Nothing in the pattern-or-practice model of proof is inconsistent with proof of "but for" causation. If the EEOC prevails in Stage I, Meathead is entitled to present evidence that its individual decisions were not based on age and/or were based on legitimate reasons, and a jury instruction that if age was not a determinative factor as to a particular hiring decision, the jury must find in favor of Meathead, as to that person. Only after Meathead has been deemed a wrongdoer that engaged in a pattern or practice of discrimination does any burden shift to Meathead.

### d.  Bifurcation is More Efficient for Pattern-or-Practice Framework.

Bifurcation is approved in pattern-or-practice cases because it makes discovery and trial more convenient and manageable, reduces juror confusion and other

prejudice, and promotes settlement. *See* Mot. at 17-27.[6] Meathead's citations to *Raymond v. Spirit* and *Welcker v. Smithkline* are factually distinct and do not support its argument that bifurcation is improper. (Opp. at 18-19).

Meathead repeatedly focuses on the class size to suggest that bifurcation is not efficient. The class size is a relevant consideration, addressed *supra* in Section II. Without Meathead's applications (or electronic data for online applications), however, the EEOC can only provide the information it has gleaned from the limited applications Meathead provided during the EEOC's investigation and estimates based on that information. To the extent Meathead suggests that bifurcation would only be proper after the EEOC has identified a threshold number of claimants as in *Darden Restaurants* or *Nebco*, see Opp. at 20, the EEOC does not object to bifurcation contingent upon formal identification of 50 or more class members, provided that Meathead immediately produces its application records to ensure quick identification.

Meathead contends, without support[7], that there is significant overlap between phase one and two of the *Teamsters* framework such that bifurcation would result in duplicative testimony. Liability and damages in pattern-or-practice hiring cases are distinct, separable issues that lend themselves well to bifurcation. Mot. at 18-19. Individualized defenses and testimony are not necessary until Stage II. Individuals who testify at Stage I will be utilized to show Meathead's pattern or practice, not to prove

---

[6] Meathead mischaracterizes the standard for bifurcation in the Ninth Circuit, stating there exists a "strong anti-bifurcation presumption" based on two unpublished district opinions. (Opp. at 20). *Medtronic* and *Robinson* are factually distinct and do not support such a conclusion.

[7] Meathead's citations are factually distinct and do not support the conclusion that there is overlap in pattern-or-practice cases. (Opp. at 23). *Zahedi* is a copyright infringement case where the court bifurcated discovery but declined to bifurcate trial at that time because its standard practice was to wait until the final pretrial conference. *Hangarter* involved bifurcation of contract and punitive damages in an unfair competition case. *Miller* involved bifurcation of a Title VII and intentional infliction of emotional distress claim. *Aerojet* was an individual breach of contract and unfair competition case. None sought bifurcation under *Teamsters*.

EEOC's Reply in Support of Motion for Bifurcation of Discovery & Trial

Meathead rejected them because of age. *See Robinson v. Metro–N. Commuter R.R. Co.*, 267 F.3d 147, 18 (2d Cir. 2001).[8]

Meathead also repeatedly argues the EEOC has multiple theories such that bifurcation would be inefficient. As explained *infra,* the EEOC has 1 claim, disparate treatment. To the extent Meathead cites *Wynn* for the proposition that the EEOC brings a separate, "'deterred-applicant' theory," the *Wynn* court is a district court opinion where plaintiffs claimed to be deterred due to "pervasive ageist policies in the [television] industry." *Wynn v. Nat'l Broad. Co*., 234 F. Supp. 2d 1067, 1097 (C.D. Cal. 2002). The Court agreed the pattern-or-practice method of proof applies to ADEA claims but went on to state deterred applicants must show applying would be futile, such as statistical evidence showing a "glaring absence" of persons in the protected group. *Id.* at 1097-99. The EEOC's pattern-or-practice evidence will include evidence sufficient to conclude that applying would be futile, such as statements by hiring managers that Meathead only hires young people and statistical evidence of the absence of older workers hired. *See Gifford v. Atchison, Topeka and Santa Fe Ry. Co*., 685 F.2d 1149, 1154 (9th Cir.1982).

### e. Bifurcation Promotes Settlement and Limits Juror Confusion.

Juror confusion is a real concern here, and a pattern-or-practice finding would have meaningful settlement implications. The cases cited by Meathead do not support its position that juror confusion is irrelevant. *Hangarter* does not even mention juror confusion, and in *Bos. Sci. Corp.*, the court stated juror confusion is "a valid concern" then denied bifurcation on several grounds. *Id.* at *4.

### f. Meathead will not be Prejudiced and Bifurcation is not Premature.

Meathead's contention that bifurcation would be prejudicial fails. By

---

[8] Meathead cites *Robinson* and *Satchell* to argue there is overlap between the "liability stage" and the "remedial phase." (Opp. at 23). *Robinson* stands for the opposite; it observed that "remedial phase" was a "misnomer" because it also implicates liability issues as to individuals, and the *Satchell* court acknowledged this was merely a dispute of "semantic[s]" (not overlap of issues). *Satchell* at *1.

Meathead's reasoning, the EEOC is on a "fishing expedition" for victims, and bifurcation is ***never*** warranted because it will ***always*** result in prejudice from "unfair delay" and added expense. The EEOC is not on a fishing expedition for evidence or victims. The EEOC filed this enforcement action alleging discriminatory hiring practices; applications are relevant to prove or disprove hiring discrimination. The putative class is people in the PAG who were not hired. EEOC seeks to notify them of the case and afford them a fair opportunity to participate if they choose. That is not a "fishing expedition"; it is EEOC's obligation as its lawsuit extinguishes the rights of individuals harmed by the alleged discrimination. 29 U.S.C. § 626(c)(1).

Limiting discovery and trial first to pattern-or-practice evidence will expedite resolution of this case. *See Robinson*, 267 F.3d at 159 (presumption "substantially lessen[s] each class member's evidentiary burden"). Meathead need look no further than its own employment records and hiring personnel to "gather evidence from percipient witnesses to defend itself." (Opp. at 28). The issue is what was motivating Meathead's decisionmakers, and what was in their minds, not the applicant.

The prejudice to the EEOC if bifurcation is denied is obvious: rather than conducting targeted discovery and trial as to Meathead's employment practices, the case will be immediately and irreparably bogged down by burdensome individual-specific discovery requests from Meathead, before the EEOC has had the opportunity to inform the putative class and identify class members. Meathead has already propounded dozens of discovery requests seeking 10 years of employment history, criminal background, physical skills, and other information about every class member, and stated its intent to subpoena and depose every claimant. (Decl. ¶19, Ex. 11)

The EEOC would be forced to put on the entire case to a jury who will hear both the pattern-or-practice evidence and the stories of 100+ class members to ultimately make a finding as to alleged pattern or practice of discrimination and also as to every single person. This will *significantly* delay the start of trial and lengthen the actual trial. Even if the class was ultimately a fifth of what the EEOC projects, to conduct 100 claimant depositions and depose a decisionmaker for each would require 2 depositions

EEOC's Reply in Support of Motion for Bifurcation of Discovery & Trial

per week, for 2 years. Coupled with discovery needed on pattern-or-practice issues, 2 years is conservative. Allowing time for dispositive motion briefing, a "unitary" trial could not reasonably begin before 2027.

Bifurcation will not result in "multiple motion practices, costs to recall witnesses, and potentially duplicative experts." As to motion practice, the opposite appears more likely. Meathead has already approached EEOC a few times about discovery motions it wants to take to the magistrate, which primarily concern claimant and damages discovery. (Decl. ¶22). As to experts, the experts at each stage are in different areas. Stage I experts are likely to be for statistical analysis of hiring data; Stage II experts are likely to be for calculation of lost earnings. No overlap is expected.

### g.  Meathead's Seventh Amendment Argument Fails.

Meathead argues trial cannot be bifurcated because all legal claims must be resolved before any equitable claims. The legal issues that must be resolved are those that "turn on common issues of fact." *Teutscher v. Woodson*, 835 F.3d 936, 944 (9th Cir. 2016).  Injunctive relief in Stage I is tied to any pattern-or-practice finding.

Meathead also claims bifurcation of trial is proscribed because it has a right to a jury trial on liquidated damages, and because the Seventh Amendment proscribes bifurcation where there is substantial overlap in the issues. First, there is a right to a jury trial "in private actions," but the statute is silent as to public actions like this one. 29 U.S.C. § 626(c)(2). Second, the Motion makesclear there is no Seventh Amendment issue given there is little overlap between Stages I and II. *See* Mot. at 26-27.

### IV.    CONCLUSION

Bifurcation of this ADEA pattern-or-practice enforcement action is necessary, will increase efficiency, and avoid prejudice. The EEOC's motion should be granted.

Dated:  April 18, 2024                          Respectfully submitted,


                                                U.S. EQUAL EMPLOYMENT
                                                OPPORTUNITY COMMISSION

                                        By:     /s/ *Andrea E. Ringer*
                                                Andrea E. Ringer
                                                Trial Attorney

### **L.R. 11-6.2 Certificate of Compliance.**

Pursuant to L.R. 11-6.2, the undersigned, counsel of record for Plaintiff EEOC, certifies that Plaintiff EEOC's Reply Memorandum in Support of its Motion for Bifurcation of Discovery and Trial contains 12 pages, which complies with the page limit set by the Standing Order for Cases Assigned to Judge Dale S. Fischer, dated January 17, 2024 (ECF No. 15).

Dated:  April 18, 2024                    Respectfully submitted,

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

By:    /s/ *Andrea Ringer*
       Andrea Ringer
       Trial Attorney