Anna Y. Park, SBN 164242
Nakkisa Akhavan, SBN 286260
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
255 East Temple Street, Fourth Floor
Los Angeles, CA 90012
Telephone: (213) 785-3080
Facsimile: (213) 894-1301
E Mail: lado.legal@eeoc.gov

Attorneys for Plaintiff
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>    Plaintiff,<br><br>    vs.<br><br>MEATHEAD MOVERS, INC.; and DOES 1-10, inclusive,<br><br>    Defendants. | Case No.:  2:23-cv-08177-DSF-AGRx<br><br>**[PROPOSED] CONSENT DECREE RE: MEATHEAD MOVERS, INC.; [PROPOSED] ORDER** |

- 1 -
[Proposed] Consent Decree

# I.

# **INTRODUCTION**

Plaintiff U.S. Equal Employment Opportunity Commission ("EEOC" or "Plaintiff") and Defendant Meathead Movers, Inc. ("Meathead" or "Defendant") (collectively, the "Parties") hereby stipulate and agree to entry of this Consent Decree (the "Decree") to fully and finally resolve Plaintiff's complaint against Meathead in *U.S. Equal Employment Opportunity Commission v. Meathead Movers, Inc.*, Case No. 2:23-cv-08177-DSF-AGRx (the "Action"). On September 29, 2023, Plaintiff filed this Action in the United States District Court, Central District of California, for violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, *et seq.*, Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 ("Title VII"), and the Equal Pay Act ("EPA"). The Action alleges that Meathead engaged in a pattern or practice of discrimination in hiring and recruitment on the basis of age (40 and over) in violation of the ADEA. Meathead denies any violation of the applicable laws and states that it did not engage in a pattern or practice of discrimination in hiring and recruitment on the basis of age. This Decree shall not be construed as an admission by Meathead of any discriminatory pattern or practice.

# II.

# **PURPOSES AND SCOPE OF THE CONSENT DECREE**

The Parties agree that this Action should be fully and completely resolved by entry of this Decree with Meathead. This Decree is made and entered into by and between Plaintiff and Meathead and shall be binding on and enforceable against Meathead, as well as its officers, directors, agents, parents, subsidiaries, successors, and assigns, if any. The scope of this Decree is companywide, unless otherwise noted. The Parties have entered into this Decree for the following purposes:

A.    To provide appropriate monetary and injunctive relief;

1  B.      To ensure that Defendant's employment practices comply with the ADEA, Title
2  VII, and the EPA;

3  C.      To ensure equal employment opportunity in hiring for applicants age 40 and over;

4  D.      To ensure equal employment opportunity in hiring for all applicants regardless of
5  sex;

6  E.      To review and revise Defendant's policies, procedures, and practices for recruiting
7  and hiring employees to ensure equal employment opportunity for individuals age 40 and
8  over and to ensure equal employment opportunity for all regardless of sex;

9  F.      To review and ensure effective training of Defendant's executives, employees,
10  managers, supervisors, and human resources personnel regarding their obligations and
11  responsibilities under the ADEA, Title VII, and the EPA when engaging in employment
12  practices such as hiring and recruitment;

13  G.      To provide an appropriate and effective mechanism for Defendant to receive and
14  handle complaints of age and sex discrimination;

15  H.      To ensure appropriate record keeping, reporting, and monitoring of Defendant's
16  employment practices; and

17  I.       To avoid the time, expense, and uncertainty of litigation.

18                                          * * *

19        For the purpose of amicably resolving disputed claims, the Parties jointly request
20  this Court to adjudge as follows:

21                                          **III.**

22                                **RELEASE OF CLAIMS**

23  A.      This Decree fully and completely resolves all issues, claims, and allegations raised
24  by the EEOC against Meathead in this Action, including EEOC Charge No. 485-2018-
25  00078 alleging violations of The Age Discrimination and Employment Act (ADEA), as
26  well as EEOC Charge No. 485-2019-00430, alleging violations of Title VII of the Civil
27  Rights Act (Title VII) and The Equal Pay Act (EPA).

28                                          - 3 -
                              [Proposed] Consent Decree

1    B.      Nothing in this Decree will be construed to limit or reduce Defendant's obligation
2    to comply fully with the ADEA, Title VII, the EPA, or any other federal employment
3    statute.

4    C.      Nothing in this Decree shall be construed to preclude the EEOC from bringing suit
5    to enforce this Decree in the event that Defendant fails to perform the promises and
6    representations contained herein.

7    D.      This Decree in no way affects the EEOC's right to bring, process, investigate, or
8    litigate other charges that may be in existence or may later arise against Defendant in
9    accordance with standard EEOC procedures.

10                                          **IV.**

11                                   **JURISDICTION**

12   A.      The Court has jurisdiction over the Parties and the subject matter of this litigation.
13   The Action asserts claims that, if proven, would authorize the Court to grant the equitable
14   relief set forth in this Decree. The terms and provisions of this Decree are fair,
15   reasonable, just, and adequate. This Decree conforms with the Federal Rules of Civil
16   Procedure, the ADEA, Title VII, and the EPA and is not in derogation of the rights or
17   privileges of any person.

18   B.      The Court shall retain jurisdiction of this Action for the duration of the Decree for
19   the purposes of entering all orders, judgments, and decrees that may be necessary to
20   implement the relief provided herein.

21                                          **V.**

22               **EFFECTIVE DATE AND DURATION OF DECREE**

23   A.      The provisions and agreements contained herein are effective immediately upon
24   the date this Decree is entered by the Court (the "Effective Date").

25   B.       Except as otherwise provided herein, this Decree shall remain in effect for 7 years
26   after the Effective Date to encompass the term of any payment plan set forth in this
27   Decree. The Decree shall sunset one year after full payment of the Class Fund (defined in

28                                         - 4 -
                               [Proposed] Consent Decree

Section VIII(B)), but no earlier than three (3) years from the Effective Date so long as the defendant is in compliance with the Decree.

## VI.

## MODIFICATION AND SEVERABILITY

A.     This Decree constitutes the complete understanding of the Parties with respect to the matters contained herein. No waiver, modification, or amendment of any provision of this Decree will be effective unless made in writing and signed by an authorized representative of each of the Parties.

B.     If one or more provisions of the Decree are rendered unlawful or unenforceable, the Parties shall make good faith efforts to agree upon appropriate amendments in order to effectuate the purposes of the Decree. If any provision of the Decree is rendered unlawful or unenforceable, the remaining provisions will remain in full force and effect unless the purposes of the Decree cannot, despite the Parties' best efforts, be achieved.

C.     By mutual agreement of the Parties, this Decree may be amended or modified in the interests of justice and fairness in order to effectuate the provisions herein.

## VII.

## COMPLIANCE AND DISPUTE RESOLUTION

A.     EEOC Review Regarding Compliance:

The EEOC can review Defendant's compliance with any provision of this Decree. The EEOC may obtain copies of any document received or created by the Monitor as a result of the Monitor's duties under the Decree. The EEOC may also review or inspect other documents related to Defendant's compliance with this Decree. Defendant will comply with any such request to review or inspect within thirty (30) days of the EEOC's request. The parties may agree to extend the time to comply upon mutual consent.

B.     Non-Compliance:

1.     The Parties expressly agree that if the EEOC has reason to believe that Meathead has failed to comply with any provision of this Decree, the EEOC may bring an action before this Court to enforce the Decree.

2.     The EEOC may immediately initiate an enforcement action in this Court for non-compliance related to non-payment of monies under this Decree. For other disputes regarding Meathead's compliance, the EEOC will notify Meathead and/or their legal counsel of record, in writing, of the nature of the dispute prior to initiating an enforcement action. This notice shall specify the particular provision(s) that the EEOC believes Meathead has violated or breached. Meathead shall have thirty (30) days from receipt of the written notice to attempt to resolve or cure the breach. The Parties may agree to extend this period upon mutual consent.

2.     The Parties agree to cooperate with each other and use their best efforts to resolve any dispute referenced in the EEOC's notice.

3.     After forty (40) days have passed from the date of receipt of the EEOC's written notice, if the Parties have reached no resolution or agreement to extend the time further, the EEOC may petition this Court for resolution of the dispute, seeking all available relief.

## VIII.

## MONETARY RELIEF AND CLAIMS ADMINISTRATION

A.     Monetary Relief:

1.     *Instatement Fund.* In settlement of this lawsuit, Meathead shall establish an Instatement Fund of $1,000,000 annually for a period of 4 years, totaling $4 million, to hire workers covered under this Consent Decree into all open positions at Meathead.

2.     *Class Fund.*

(a)     Meathead shall establish an interest bearing escrow account (the "Class Fund") managed by the Claims Administrator. The Class Fund shall be used to make payments to the eligible Claimants identified by the EEOC. The EEOC shall

1  determine who is eligible to be a Claimant based on the EEOC's assessment of their facts

2  and damages under the ADEA, Title VII, and the EPA. The EEOC has sole discretion to

3  determine the criteria for eligibility, the amounts to be distributed to each eligible

4  Claimant from the Class Fund, and the characterization of settlement shares for each

5  eligible Claimant. Meathead agrees that the EEOC's determination of these issues is

6  final, and Meathead will neither participate in, nor object to, those determinations.

7        (b)    Meathead shall pay a gross sum of $2 million in monetary relief to the

8  Class Fund. By December 1, 2026, Meathead shall pay the first installment of $400,000

9  into the Class Fund. Thereafter, if Meathead pays $275,000 in each of the subsequent 4

10  years, for a total payment of $1.5 million, then the Class Fund will be discounted to $1.5

11  million. If Meathead pays $985,000 by December 1, 2027, after the initial installment,

12  then the total Class Fund will be discounted to $1.385 million. Otherwise, the remainder

13  of the fund is due to be paid annually in equal amounts thereafter up to $ 2 million. The

14  Claims Administrator shall provide the EEOC with written verification of each funding

15  within ten (10) days of each deposit.

16        (c)    The Defendant shall provide security such as a guarantee or lis

17  pendent to cover the Class Fund amount in this Decree until the total amount is paid

18  within ten (10) days of the Effective Date.

19  C.    Claims Administration:

20      1.    *Claims Administrator.* Within 30 days of the Effective Date, Meathead shall

21  appoint a specific qualified individual or organization ("Claims Administrator"),

22  approved by the EEOC, to oversee the Claims Process and payments to eligible

23  Claimants as directed by the EEOC. The Claims Administrator will work with the EEOC

24  and Defendant to carry out the terms of the Decree. Meathead shall ensure that it provides

25  the Claims Administrator with a copy of the Decree and that the Claims Administrator

26  understands its obligations under this Decree, specifically under Section VIII. The Claims

27  Administrator shall be responsible for responding to information requests from

28

- 7 -
[Proposed] Consent Decree

1   individuals regarding the claims process. If the EEOC determines that the Claims
2   Administrator initially appointed has failed to fulfill its duties under this Decree,
3   Meathead shall have 30 business days to identify a proposed replacement Claims
4   Administrator. Meathead shall pay all costs associated with the selection and retention of
5   the Claims Administrator and the performance of the Claims Administrator's duties
6   under this Decree.

7       2.    *Claims Notice to the Public.* The EEOC shall provide the Claims
8   Administrator and Meathead with a Public Notice of Settlement for Publishing ("Public
9   Notice") and a list of online media/news sites for publishing. The Public Notice shall
10  provide information regarding eligibility and how to make a claim on the Class Fund.
11  Within 45 days of receipt, the Claims Administrator shall publish the Public Notices on
12  the online media and/or news sites identified. The EEOC has complete discretion to
13  determine the online media/news sites for publishing the Public Notice, the frequency of
14  publishing the Public Notice, and the length and content of the Public Notice.

15      3.    *List of Potential Claimants.* Within 60 days of the appointment of a Claims
16  Administrator , Meathead shall forward to the Claims Administrator and the EEOC an
17  excel list of all applicants that sought employment with Meathead and staffing agencies
18  utilized by Meathead from 2017 to the present ("the Potential Claimant List"). For each
19  identified applicant, the Potential Claimant List shall include all identifying information
20  known, including their full name, date of birth, sex, social security number, mailing
21  address(es), phone number(s), email address(es), date(s) of application and/or
22  interview(s), position and location sought, and if hired, date of hire and job title. Within
23  45 days of being retained but no earlier than the Effective Date, the Claims Administrator
24  shall conduct database searches using Accurint or a similar system to find up-to-date
25  contact information, including phone numbers, email addresses and mailing addresses,
26  and add the updated contact information to the Potential Claimant List.

27

28      - 8 -

4.  *Claims Notice and Questionnaire.* The EEOC shall provide the Claims Administrator with a Claims Notice and a Questionnaire. The Claims Notice shall provide phone and email contact information for the Claims Administrator and explain how Potential Claimants can access and submit the Claims Questionnaire. The Claims Administrator shall send the Claims Notice via electronic and U.S. mail to the individuals included on the List of Potential Claimants, within 45 business days of receipt of the EEOC's Claims Notice and Questionnaire.

5.  *Website and Claims Questionnaire.* Within 45 days of retaining a Claims Admisntrator, the Claims Administrator shall establish a website, approved by the EEOC, that provides information regarding the Decree, the Claims Process, and how to complete the Claims Questionnaire. The website shall include an embedded Claims Questionnaire, approved by the EEOC. The Claims Questionnaire shall also be available for download by Potential Claimants, as well as in paper form upon request by the EEOC or the Potential Claimant. The website shall include phone, mail, and email contact information for the Claims Administrator. The website shall also explain how Potential Claimants can seek assistance in completing the Claims Questionnaire from the Claims Administrator. On a weekly basis, the Claims Administrator shall provide the EEOC with an electronic copy of all Claims Questionnaires received and an excel list of all Potential Claimants that submitted Claims Questionnaires to date.

6.  *Undeliverable Mailings.* Within 45 days of mailing of the Claims Notice, the Claims Administrator shall attempt to obtain accurate contact information for undeliverable mailings. The Claims Administrator shall conduct database searches using Accurint or a similar system to find the Potential Claimant's most recent contact information, including phone number, email address and mailing address. If the Claims Administrator finds more recent contact information, the Claims Administrator shall resend the Claims Notice to the new email or mailing address. If the Claims Administrator fails to find a more recent mailing address, the Claims Administrator shall

1 notify the EEOC and describe its efforts to locate such employee(s) within 45 days of
2 mailing of the Claims Notice.

3     7.    *Distribution of Settlement Funds*. The EEOC will assess and determine the
4 eligibility of a Potential Claimant by determining that they have a viable claim under the
5 ADEA, Title VII, or the EPA and are entitled to monetary relief, if any.  The EEOC shall
6 provide the Claims Administrator with one or more distribution lists for the eligible
7 Claimants, which shall include the eligible Claimant's name, the amount to be paid, the
8 classification of such amounts to be paid, and whether they are interested in working for
9 Meathead ("Distribution List"). Within 30 days of receipt of a Distribution List, the
10 Claims Administrator shall send each eligible Claimant a Notice of Settlement Award,
11 approved by the EEOC. Within 30 days of receipt of a Distribution List, the Claims
12 Administrator shall send to each eligible Claimant via certified mail a check for the
13 monetary amount specified by the EEOC. The Claims Administrator shall be responsible
14 for verifying the mailing addresses for eligible Claimants. Within 20 days of issuance, the
15 Claims Administrator shall send the EEOC copies of settlement checks via electronic
16 mail.

17     8.    *Characterization of Payments*. The EEOC has sole discretion to characterize
18 the monetary relief for each Claimant as lost wages or liquidated damages. The Claims
19 Administrator shall mail the necessary tax documents to eligible Claimants within days of
20 sending the settlement checks. For wage compensation, Meathead shall issue Claimants
21 an IRS Form W-2. For non-wage compensation, Meathead shall issue Claimants a Form
22 1099. No tax withholdings shall be made, regardless of the characterization of monetary
23 relief. Meathead shall pay the employer's portion of all deductions required by law,
24 including but not limited to FICA and FUTA taxes and the employer-share of payroll
25 taxes, which shall not be deducted from payment of the monetary settlement amount(s) to
26 Claimants. Meathead shall make all appropriate reports to the Internal Revenue Service
27 and other tax authorities. Within 20 business days of issuance of the aforementioned tax

28

- 10 -
[Proposed] Consent Decree

forms, the Claims Administrator shall submit copies and any related correspondence to the EEOC via electronic mail.

9. *Remaining Settlement Funds and Non-Negotiated Checks*. On a semi-annual basis, the Claims Administrator will notify the EEOC of the remaining amount available out of the Class Fund plus interest and identify any check not negotiated and/or returned non-negotiated, to enable the Parties to track remaining settlement funds for redistribution. The Claims Administrator shall reissue checks if necessary. All funds remaining at the expiration of this Decree shall be distributed according to a Final Distribution List provided by the EEOC or can be utilized by the Defendant for additional injunctive relief remedies above and beyond what is set forth in this Consent Decree. The EEOC will make the final decision on allocation of the disposition of the final settlement funds but will consider the defendant's proposal on how the money will be utilized.

## IX.

## CLAIMANT SPECIFIC INJUNCTIVE RELIEF

A.   Employment of Qualified Claimants:

1.   The Claims Questionnaire shall include an inquiry as to whether the Potential Claimant is interested in working for Meathead created per the Instatement Fund. Potential Claimants interested in working for Meathead will be asked (i) what position(s) they are interested in; (ii) at what locations they want to work; (iii) their qualifications for the positions sought; (iv) their availability to start and to work particular days and shifts; and (v) the rate of pay sought.

2.   Eligible Claimants shall be eligible for employment with Meathead into available positions. Meathead shall not consider the sex, or age (40 or older) of eligible Claimants or their participation in this Action when making hiring decisions.

3.   Meathead shall attempt to interview for employment all eligible Claimants that express interest in working for Meathead. Meathead shall provide the EEOC with a written report on a semi-annual basis that includes (a) a list of all Claimants that seek employment but are not qualified, with an explanation why Meathead determined the

- 11 -
[Proposed] Consent Decree

Claimant is not qualified, (b) a list of each qualified Claimant offered employment with Meathead and the job title, and (c) a list of each qualified Claimant not offered employment with Meathead because the position sought is currently unavailable. Meathead shall not refer to past application or interview records when determining whether an eligible Claimant is qualified. If the EEOC does not agree with Defendant's determination that a Claimant is not qualified, the EEOC may request further information, to be provided to the EEOC within 20 days of the EEOC's request. Meathead and the Monitor will work together regarding any issues related to the hire of eligible Claimants. In the event of a dispute concerning qualifications for hire, the EEOC will be informed to resolve any issues.

4.      Employment shall not be in lieu of any monetary damages to which the EEOC determines the eligible Claimant is entitled.

B.      Applicant Records and Personnel Files:  Meathead shall ensure that its applicant records and/or personnel files do not include any references to an eligible Claimant's participation in this Action or their age. Any records relating to an eligible Claimant's participation in this Action and/or their settlement award shall be kept separately from applicant records and personnel files.

## X.

## GENERAL INJUNCTIVE RELIEF

A.      Anti-Discrimination:

Meathead, its officers, directors, management (including all supervisory employees), human resources personnel, agents, parents, subsidiaries, successors, and assigns are hereby enjoined from: (a) failing to hire qualified applicants due to their sex or age (40 or older) (b) engaging in recruitment or advertising practices that discriminate on the basis of age or sex; and (c) engaging in or being a party to any action, policy, or practice that discriminates on the basis of age or sex.

B.      Anti-Retaliation:

Meathead, its officers, directors, management (including all supervisory

[Proposed] Consent Decree

1   employees), human resources personnel, agents, parents, subsidiaries, successors, and

2   assigns are hereby enjoined from implementing or permitting any action, policy, or

3   practice that subjects any applicant or current or former employee of Defendant to

4   retaliation because he or she has, in the past, or during the term of this Decree:

5           1.      Opposed any practice made unlawful under the ADEA, Title VII, and the

6   EPA;

7           2.       Filed a complaint or charge of discrimination alleging such practice;

8           3.      Testified or participated in any manner in an internal or external investigation

9   or proceeding relating to this case or any claim of a violation of the ADEA, Title VII, and

10  he EPA;

11          4.      Was identified as a Potential or eligible Claimant in this Action;

12          5.      Asserted any right under this Decree; or

13          6.      Sought and/or received any relief in accordance with this Decree.

14                                          **XI.**

15                      **SPECIFIC INJUNCTIVE RELIEF**

16  A.      Equal Employment Opportunity Monitoring:

17          Within 45 days after the Effective Date, Meathead shall select  third-party Equal

18  Employment Opportunity Monitor ("Monitor"), and inform the EEOC of the selection,

19  with demonstrated experience in remediating discrimination in hiring and recruitment

20  practices to ensure Meathead's compliance with the letter and spirit of this Decree. The

21  Monitor shall have access to Meathead's documents and employees and shall

22  continuously monitor Meathead's compliance with the ADEA, Title VII, the EPA, and

23  the provisions of this Decree. Meathead shall bear all costs associated with the selection

24  and retention of the Monitor and the performance of their duties. The EEOC may require

25  that the Monitor be replaced if the Monitor fails to carry out its duties under this Decree

26  objectively and in good faith.

27          The responsibilities of the Monitor shall include:

28
                                    - 13 -
                            [Proposed] Consent Decree

1.      Reviewing and evaluating Meathead's policies, practices, and procedures with respect to recruitment, hiring, retention, promotion, and other terms and conditions of employment to determine whether age or sex is being considered in employment decisions;

2.      In conjunction with Meathead and its marketing team, revising Meathead's policies, practices, and procedures with respect to recruitment, hiring, retention, promotion, and other terms and conditions of employment, including modifying employee policies, job descriptions, job postings, and recruitment and hiring materials, to ensure applicants receive equal employment opportunity without consideration of age (40 or older), sex, and are not chilled from seeking employment based on age or sex;

3.      Reviewing and evaluating Meathead's policies, practices and procedures with respect to marketing, including the marketing materials themselves, to ensure Meathead's outward messaging does not chill applicants from seeking employment because of their age (40 or older) and/or sex, or signal that Meathead exclusively employs young people or segregates based on sex;

4.      In conjunction with Meathead and its marketing team, revising Meathead's policies, practices, and procedures with respect to marketing—including advertising materials such as brochures, scripts for television and radio advertisements, proposed billboard designs, and other related material—to reflect that Meathead employs workers of all ages and sexes;

5.      Creating, reviewing, and/or revising Meathead's policies and procedures with respect to age and sex discrimination to clearly define and prohibit age and sex discrimination in hiring, recruitment, and assignment;

6.      Creating, reviewing, and/or revising Meathead's training curriculum under the Decree and its implementation to ensure effective training of executives, employees, supervisors, hiring personnel, and human resources personnel on their rights and

obligations under the ADEA, Title VII, the EPA, and this Decree, including proper employment practices in recruitment and hiring;

7.    Conducting semi-annual audits during the first year of the Consent Decree and annual audits thereafter of hiring and promotion practices and reviewing applicant surveys and complaints to evaluate whether Meathead's employment practices comply with the ADEA, Title VII, and the EPA;

8.    Reviewing the recruitment plan to ensure it is consistent with the ADEA, Title VII, and the EPA and evaluating Meathead's efforts and progress in meeting its hiring endeavors;

9.    Ensuring complaint procedures are disseminated and complaints of age and sex discrimination are reviewed and properly handled and addressed;

10.    Preparing reports to the EEOC on Meathead's progress and compliance under this Decree;

11.    Maintaining an open line of communication between the Monitor and Meathead's executives, managers, supervisors, hiring personnel, and human resources personnel to ensure all understand and fulfill their obligations under this Decree and the ADEA, Title VII, and the EPA;

12.    Ensuring the retention and maintenance of all applicant records and any other documents required by this Decree; and

13.    Oversee the Instatement Fund and the hiring endeavor process to ensure compliance with the ADEA, Title VII, and the EPA; and

14.    Otherwise ensuring Meathead's overall compliance with this Decree and the ADEA, Title VII, and the EPA.

B.    Policies and Procedures:

1.    *Revision of Policies and Procedures.* Within 45 days of retaining a Monitor, Meathead shall, with the assistance of the Monitor, create, review, and/or revise policies, practices, and procedures with respect to non-discrimination in recruitment and hiring

("Policies and Procedures") and provide a copy to the EEOC for approval. The Policies and Procedures shall clearly define and prohibit discrimination on the basis of age and sex and expressly discuss how to prevent discrimination on the basis of age and sex in hiring and recruitment. Meathead and/or the Monitor shall obtain EEOC approval prior to distributing its Policies and Procedures to employees.

The Policies and Procedures shall be written in a clear, easy-to-understand style and format and printed in a legible font size of no less than 12-point font. The Policies and Procedures shall be available in all language(s) commonly spoken by Defendant's employees.

At all times, the Policies and Procedures shall, at a minimum, include:

(a)    a strong and clear commitment to a workforce free of discrimination on the basis of age and sex;

(b)    a clear and comprehensive description of age and sex discrimination and how it manifests during the recruitment and the hiring process;

(c)    a discussion of improper assumptions about age and sex, and physical and mental ability;

(d)    examples of conduct that could constitute unlawful age or sex discrimination in recruitment or hiring, and a description of the disciplinary consequences for those engaging in such conduct;

(e)    guidelines regarding proper recruitment and hiring practices under the ADEA, Title VII, and the EPA; and

(f)    a statement that all employees, including managers, are responsible for maintaining an inclusive environment towards clients, applicants, and employees alike, irrespective of age, sex, or any other protected bases.

Defendant shall submit to the EEOC any proposed revisions to the Policies and Procedures during the term of the Decree for approval prior to implementation.

[Proposed] Consent Decree

1    2.    *Complaint Procedure.* The Policies and Procedures shall also contain a
2    complaint procedure for employees and applicants, which shall incorporate a clearly
3    described process for submitting complaints of discrimination, including contacting
4    Meathead's human resources department directly or notifying a manager or human
5    resources representative verbally or in writing. The complaint procedure shall also
6    include a direct toll-free phone number and email address for Defendant's human
7    resources department. Additionally, Meathead shall also include this information in its
8    employment applications by adding a statement that Meathead does not discriminate on
9    the basis of age, sex, and that applicants who believe they experienced age or sex
10   discrimination are encouraged to submit a complaint to Meathead. The employment
11   application shall also include the phone number and email address for the human
12   resources department. Meathead shall track and report to the Monitor any and all
13   complaints received that relate to age or sex discrimination in the Complaint Log.

14   3.    *Distribution of Policies and Procedures.* Within 30 days of approval by the
15   Monitor and the EEOC, Defendant shall distribute its Policies and Procedures to all
16   employees, in all language(s) commonly spoken by its employees. This shall include (a)
17   posting copies in clearly visible areas within Defendant's worksites and (b) providing all
18   current employees with paper copies and electronic copies sent to their last known
19   personal email address. Thereafter, Meathead shall distribute its Policies and Procedures
20   in the same manner to new employees within 15 days of hire. Each employee shall sign a
21   form acknowledging receipt of the Policies and Procedures. Each employee involved in
22   hiring and/or recruitment shall sign a statement that they understand Meathead's Policies
23   and Procedures expressly prohibit discrimination on the basis of age or sex in any
24   context, including during the recruitment and the hiring process.

25   4.    *Lactation Policy.* Meathead, with the Monitor, shall create a lactation policy
26   to accommodate lactating employees for all positions including movers, packers, and
27
28                                   - 17 -
                              [Proposed] Consent Decree

1  laborers. Meathead will work with the Monitor to ensure the lactation policy is
2  implemented, disseminated and incorporated into the trainings below.

3  C.    Training

4        1.    *Annual Mandatory Training.* The training regimen set out in Section XI.C
5  shall be mandatory with respect to all employees, managers, supervisors, human
6  resources personnel, and executives. The trainings shall occur within 45 days of approval
7  of training content by the EEOC, and thereafter annually. Employees unable to attend the
8  scheduled live training or hired after a Compliance Training are required to attend an
9  alternate training session within 45 days that is either (a) live and interactive; or (b) a
10 video recording of the live training with an interactive component.

11       2.    *Live & Interactive Training.* All trainings provided pursuant to this Decree
12 shall be live and interactive unless otherwise indicated. The training shall be conducted
13 in-person at each Meathead worksite, or via an online platform with live two-way video
14 limited to 40 participants per training. All training sessions shall be recorded and
15 maintained for the duration of the Decree. The training shall include a test to ensure
16 comprehension of the material presented. All trainings and training materials shall be
17 provided in language(s) commonly understood by Defendant's employees.

18       3.    *Trainer & Training Curriculum.* Within 30 days after the Effective Date,
19 Defendant shall submit for review and approval to the Monitor the identity and
20 qualifications of the qualified third-party trainer selected, a description of the trainings to
21 be provided, the training materials, and an outline of the training curriculum. The trainer
22 must speak fluently the language(s) that most Meathead employees understand, and an
23 interpreter shall be provided, if necessary, in any other language required for employees
24 to understand.

25       4.    *Introductory Video.* Meathead shall begin each compliance training with a
26 live or video statement from Meathead's Chief Executive Officer that expresses
27 Meathead's commitment to recruiting and employing qualified individuals irrespective of

28
- 18 -
[Proposed] Consent Decree

1    age, sex, or other protected characteristics and that the training is an important

2    component of combatting discrimination in hiring and recruitment. The statement shall

3    also make explicit that Meathead does not make hiring decisions based on age, student

4    status, sex, and that it welcomes qualified applicants of all ages and stages of life.

5          5.    *Advanced Compliance Training* All executives, managers, supervisors,

6    human resources employees, and employees involved in recruiting, interviewing, or

7    hiring employees shall attend an annual training of at least two (2) hours duration that

8    exclusively focuses on discrimination on the basis of age and sex and how to create an

9    age and sex-inclusive workforce and prevent age and sex discrimination in recruitment

10   and hiring. The training shall require the participation of all attendees in role play

11   scenarios and/or other interactive activities designed to show how assumptions about age

12   and sex may affect hiring decisions.  The Monitor shall attend the trainings under this

13   section, which shall address the following:

14          (a)    the role and purpose of the ADEA, Title VII, and the EPA, including

15   the historical events that led to its passage;

16          (b)    a thorough discussion of the conduct prohibited by the ADEA, Title

17   VII, and the EPA, including how to recognize age and sex discrimination in advertising,

18   recruitment, and hiring, which may include a review of conduct that courts found did or

19   did not violate the ADEA, Title VII, or the EPA,

20          (c)    the lactation policy and the role managers, supervisors, and human

21   resources individuals will play in the implementation of the policy;

22          (d)    examples of recruitment practices that may deter applicants age 40

23   and over and/or female applicants, or suggest job segregation based on sex;

24          (e)    examples of hiring practices that discriminate against applicants on

25   the basis of age (40 and over) and/or sex;

26

27

28                          - 19 -
                    [Proposed] Consent Decree

1         (f)    examples of improper assumptions made during recruitment and the

2  hiring process regarding age and/or sex, as it recruits to mental or physical ability or job

3  suitability;

4         (g)    preventative and corrective measures against age and sex

5  discrimination, including a discussion amongst participants regarding how Meathead can

6  ensure an age and sex-inclusive workforce going forward and avoid assumptions

7  regarding age and sex in decision making in recruitment and hiring;

8         (h)    how to properly identify, handle and investigate complaints of age or

9  sex discrimination in a neutral manner; and

10        (i)    Meathead's obligations under the Decree, including the Policies and

11  Procedures, and the role of managers, recruiters, hiring personnel, supervisors, human

12  resources, and executives in complying with the Decree.

13       The trainer shall solicit anonymous course evaluation forms to be filled out by

14  attendees, with copies provided to the Monitor, to examine the effectiveness of the

15  training. The Monitor will report to the EEOC on the Monitor's assessment.

16      6.    *Compliance Training for Non-Management Employees.*

17       All other employees shall attend an annual training of at least one (1) hour

18  duration. The training shall include the following:

19        (a)    the role and purpose of the ADEA, Title VII, and the EPA;

20        (b)    a thorough discussion of the conduct prohibited by the ADEA, Title

21  VII, and the EPA and how to recognize age and sex discrimination in advertising,

22  recruitment, hiring, and promotion;

23        (c)    a discussion amongst participants regarding how Meathead can ensure

24  an applicant pool that includes qualified applicants of all ages and sexes and inclusive

25  work environment for all employees;

26        (d)    the lactation policy and the implementation of the policy;  and

27        (e)    Meathead's Policies and Procedures.

28

- 20 -
[Proposed] Consent Decree

1    The trainer shall solicit anonymous course evaluation forms to be filled out by

2    attendees, with copies provided to the Monitor, to examine the effectiveness of the

3    training. The Monitor will report to the EEOC on the Monitor's assessment.

4    6.    *Verification.* All persons shall verify their attendance in writing or

5    electronically. Defendant shall maintain copies of training sign-in sheets for the duration

6    of the Decree. On an annual basis Defendant shall produce to the EEOC and to the

7    Monitor an outline of the training content, the training materials, dates for past and future

8    training(s), identity of trainer used, and identity of attendees for past training sessions.

9    D.    Recruitment Plan and Hiring Practices:

10    1.    *Review of Recruitment and Hiring Practices.* Within 60 days of the Effective

11    Date, Meathead shall review and revise in consultation with the Monitor its recruitment,

12    applicant, and hiring materials and its published and written materials to determine what

13    changes are needed to encourage a workforce that includes qualified individuals age 40

14    and older and female individuals.

15    2.    *Recruitment Plan & Marketing Practices.* Throughout the term of this

16    Decree, Meathead shall make a good faith effort to recruit workforce of all ages and

17    sexes including (a) recruiting qualified individuals age 40 and over into all job vacancies

18    and (b) recruiting a female applicants to apply for mover positions, in a manner that

19    promotes equal employment opportunity. Meathead shall make best efforts to increase

20    the pool of applicants 40 and over and the pool of female applicants by creating and

21    implementing a targeted recruitment plan through the following means, within 45 days

22    after Monitor input as outlined in section XI.A.2 and XI.A.4:

23    (a)    Ensure that marketing efforts do not impact the recruitment, hiring,

24    and retention of older workers due to age or sex;

25    (b)    Instruct personnel and contractors involved in hiring, recruitment,

26    and public relations to ensure their recruitment activities include actively recruiting

27

28    - 21 -
[Proposed] Consent Decree

1  qualified older applicants for all available positions and increase the referral and pool of

2  applicants 40 and over;

3      (c)    Instruct personnel and contractors involved in hiring, recruitment, and

4  public relations to actively recruit qualified female applicants for mover positions and

5  increase the referral and pool of female applicants;

6      (d)    Place recruitment ads on sources frequented by individuals 40 and

7  over

8      (e)    Utilize marketing and recruitment techniques that reflect an age and

9  sex-inclusive work environment, including but not limited to using photographs that

10  reflect a workforce that includes individuals age 40 and older and female individuals;

11      (f)    Review and revise recruitment procedures/practices to include posting

12  recruitment flyers and advertising jobs at locations and websites frequented by

13  individuals age 40 and over;

14      (g)    Review and revise imagery and/or language in tangible marketing

15  activities, including Meathead's website, advertisements, social media posts,

16  commercials, online videos, and any other marketing platform, to reflect its workforce

17  includes individuals age 40 and older and female individuals;

18      (h)    Review and revise Meathead's future branding materials, including

19  but not limited to, boxes, tee-shirts, trucks, and posters to ensure none of the above deter

20  qualified applicants age 40 and over from seeking employment; and

21      (i)    Ensure Meathead communications to the press reflect a workforce that

22  includes individuals age 40 and older and female individuals.

23      2.    *Hiring Practices*. Throughout the term of this Decree, Meathead shall make

24  a good faith effort to ensure its hiring practices do not discourage hiring officials from

25  hiring qualified individuals age 40 and over and female applicants, or otherwise

26  disadvantage older workers or female applicants. At a minimum, Meathead shall take the

27  following steps within 45 days of the Effective Date:

28

[Proposed] Consent Decree

1           (a)    Revise its interview process to include objective, job-related questions

2    and to require interviewers to maintain detailed interview notes;

3           (b)    Add objective job-related skills and qualifications to hiring criteria

4    and remove disqualifying criteria related to prior employment in the moving industry;

5           (c)    Train all employees involved in the hiring process about improper

6    assumptions made regarding age and sex and that Meathead does not discriminate based

7    on age, student-status, or sex, thus it is improper to fail to hire an applicant based on

8    assumptions about their abilities, culture fit, and/or student-status because of their age or

9    sex;

10           (d)    Maintain sex-neutral job titles and uniforms for all positions;

11           (e)    Modify application and/or new-hire documents to include a

12    commitment to equality that encourages applicants and employees of any age and sex to

13    apply for any positions that they would like to be considered for; and

14           (f)    Modify application and/or new-hire documents and employee lists

15    that reference employees or applicants' height, weight, physique, or graduation year.

16    E.    Applicants 40 and Over:

17           Meathead shall make good faith efforts to increase the representation of qualified

18    applicants age 40 and over into all available positions commensurate with the applicant

19    flow and/or others moving companies or companies in the industry. The Monitor shall

20    assess Meathead's efforts to meet this provision. Meathead shall report semi-annually

21    regarding the age of applicants, its workforce, and its new hires. If Meathead fails to meet

22    the annual endeavor(s), Meathead shall explain in the semi-annual report the efforts to

23    aspire to increase representation of workers 40 or older commensurate with the applicant

24    flow and/or the industry. The EEOC shall review Meathead's good faith compliance with

25    its obligations. If Meathead has acted in good faith in its endeavors but, despite its good

26    faith efforts, has not attained the aspired endeavor for that year, Meathead may be

27    excused from such non-compliance and deemed not in violation of this section of the

28    

[Proposed] Consent Decree

1  Decree. The Parties shall work together to carry out the spirit and good faith intent of this

2  Decree. The Monitor shall provide a report on Meathead's progress and compliance with

3  this provision. Reporting will be provided according to the different positions including

4  movers, packers, laborers, managers, and customer service representatives.

5  F.    Female Applicants:

6        Meathead shall make good faith efforts to hire qualified female individuals into all

7  positions, with a particular focus on increasing representation of female employees into

8  mover positions. Meathead shall report semi-annually regarding the sex of applicants, its

9  workforce, and its new hires into packing and moving positions. If Meathead fails to meet

10 the annual endeavor(s) to be commensurate with the applicant flow and/or other moving

11 companies in the industry, Meathead shall explain in the semi-annual report the efforts

12 taken to reach that aspired percentage and why it was not reached, such as it hired the

13 most qualified applicants based on their physical abilities. The EEOC shall review

14 Meathead's good faith compliance with its obligations. If Meathead has acted in good

15 faith in its endeavors but, despite its good faith efforts, has not attained the aspired

16 endeavor for that year, Meathead may be excused from such non-compliance and deemed

17 not in violation of this section of the Decree. The Parties shall work together to carry out

18 the spirit and good faith intent of this Decree. The Monitor shall provide a report on

19 Meathead's progress and compliance with this provision.

20 G.    Applicant Flow Data:

21       To the extent that Defendant is hiring during the duration of this Decree,

22 Defendant shall maintain all job applications and applicant flow data for the duration of

23 this Decree and as required under federal law. To the extent Defendant uses an external

24 online service and/or third party for applicants to apply for positions with Defendant,

25 Defendant must ensure to download all applications and/or documents produced by the

26 applicants and maintain such documents according to federal law and under this Decree.

27 Defendant shall also maintain all documents related to those applicants they considered

28

1  for hire and/or ultimately hired, including notes related to the selection process.
2  Defendant shall produce the Applicant Flow Data and Applicant Flow Log as described
3  below to the EEOC semi-annually.

4  H.    Applicant Flow Log:

5          Meathead shall maintain a detailed Applicant Flow Log that identifies who was
6  considered for hire and who was hired, by position. Meathead shall submit the Applicant
7  Flow Log in Excel, with links to the relevant attachments to the Monitor and the EEOC
8  on a semi-annual basis thereafter. The Applicant Flow Log and attachments shall include
9  the following information for each job opening:

10         1.    Date of the opening;

11         2.    Job title and description;

12         3.    Location;

13         4.    Name, sex and age of the selected applicant;

14         5.    Where all advertisements were placed in connection with recruiting for the
15  position, as well as a link to copies of the job announcement;

16         6.    Number of applications and inquiries received;

17         7.    Name of each applicant and whether they were interviewed;

18         8.    Documentation submitted by the applicants in connection with the
19  application process;

20         9.    The names and job titles of any individuals involved in the recruitment and
21  hiring process;

22         10.    Any records or documents pertaining to the selection process, including, but
23  not limited to, interview notes;

24         11.    If the applicant was not selected, the reason for the denial, if any; and

25         12.    Complaints made by applicants regarding discrimination during the
26  recruitment and hiring process.

27

28                              - 25 -
                        [Proposed] Consent Decree

I.  Compliance Audits:

1.  *Audit Evaluation*. The Monitor shall audit Meathead's recruitment, marketing, and/or hiring practices on a semi-annual basis and report the results to the EEOC. The report shall include assessments and recommendations for remedying identified issues with age or sex discrimination.

2.  *Audit of Applicants and Hires*. The Monitor will review the applicants and the actual hires to ensure compliance with the ADEA, Title VII, and the EPA. The Monitor shall monitor the recruitment and hiring process to ensure that age and sex are not determinate factors and that neither older workers nor female applicants are excluded due to their age or sex. On a quarterly basis, the Monitor shall survey applicants regarding the application and hiring process to ensure that all applicants receive equal employment opportunity and age and sex are not considered.

3.  *Complaint Audits*. On an ongoing basis, the Monitor shall review all complaints of age and sex discrimination made during the term of the Decree and any investigation or response to those complaints. The Monitor shall evaluate the adequacy of Meathead's investigation or response, recommend appropriate preventative steps to avoid reoccurrence of the same or similar issues, and recommend appropriate corrective measures if appropriate.

J.  Complaint Logs:

Within 60 days of the selection of the Monitor, Meathead shall work with the Monitor to create and maintain a procedure for centralized tracking of all formal and informal complaints regarding age and sex discrimination. These tracking records shall contain at least the following information:

1.  Name, age, and sex of complainant;

2.  date, location, and nature of the complaint;

3.  a summary of the complainant(s) allegations;

4.  names of alleged perpetrators;

- 26 -
[Proposed] Consent Decree

5.    a timeline and description of actions taken in response to the complaint, including the investigation and resolution of the complaint; and

6.    if the complaint is received from an applicant, the Complaint Log shall also reference the position sought and identify the applicant hired for the position.

The Monitor shall review all Complaints received at least quarterly and report to Meathead and the EEOC, including if the Monitor finds evidence that Meathead employees are discriminating against applicants based on age (40 and over) or sex in hiring, recruitment, or assignment. The Monitor shall have access to all records and call logs regarding complaints of age or sex discrimination.

H.    Posting of Notice of Consent Decree:

Within 20 business days after the Effective Date and throughout the term of this Decree, Meathead shall post laminated copies of the Notice attached as Exhibit A in clearly visible locations frequented by employees and applicants in Meathead's workplaces. If the Notice becomes defaced or illegible, Meathead shall replace it with a clean copy right away. Within 20 days of the Effective Date, Meathead shall send an electronic copy of the Notice to its employees. The Notice shall be printed in 12-point (or larger) font and posted in all language(s) commonly understood by Meathead's employees.

I.    Recordkeeping:

For the duration of the Decree, Defendant shall establish a recordkeeping procedure that provides for the maintenance of all records necessary to demonstrate its compliance with this Decree, including but not limited to the documents specifically identified below, and to verify that the reports submitted are accurate. The records to be maintained shall include:

1.    All documents and communications related to applicants for employment, including but not limited to, applications, resumes, emails, interview notes, applicant evaluations, hiring criteria, background checks, referrals by employees, rejection or offer

- 27 -
[Proposed] Consent Decree

1    letters, new hire documents, including new employee biographies, and any other
2    document relating to successful and non-successful applicants, their qualifications, and
3    the reasons they were or were not offered employment;

4    　　　2.　　All documents and communications related to hires and terminations by time
5    period, by position and location;

6    　　　3.　　All documents and communications related to marketing and recruitment,
7    including but not limited to, internal and external job announcements/notices, hiring
8    posters, recruitment flyers, records reflecting recruitment efforts, and electronic records,
9    audio and visual recordings, radio, television commercials, and website content;

10    　　　4.　　All communications with the Monitor;

11    　　　5.　　All documents and communications related to any formal or informal
12    complaint of discrimination, including documents relating to their investigation and
13    resolution;

14    　　　6.　　All forms acknowledging employees' receipt of Defendant's Policies and
15    Procedures;

16    　　　7.　　All documents verifying the occurrence of all training sessions and names
17    and positions of all attendees; and

18    　　　8.　　All documents related to compliance with the terms of the Decree.

19    　　　Meathead shall make the aforementioned records available to the EEOC within 60
20    business days following a written request by the EEOC.

21    J.　　Reporting:

22    　　　1.　　*Initial Reporting.* Defendant shall comply with all deadlines outlined in the
23    Decree, which include informally reporting information to the EEOC, obtaining EEOC
24    approval of specific actions required by this Decree, and semi-annual reporting of the
25    applicant flow data under Section XI.E.3. Within ninety (90) days of the Effective Date,
26    the Monitor shall submit a report to the EEOC summarizing Meathead's obligations
27    under the Decree, its compliance, and the work performed to date.

28

- 28 -
[Proposed] Consent Decree

1    2.    *Semi-Annual Report.* A Six months following the Initial Report, the Monitor

2 shall submit the Semi-Annual Report to the EEOC. Subsequent reports shall be submitted

3 in six month intervals thereafter.  The Semi-Annual Report shall describe all work

4 performed pursuant to this Decree and provide the Monitor's feedback and

5 recommendations going forward. The report shall include the Monitor's evaluation and

6 recommendations following review of Meathead's policies, practices, and procedures

7 regarding marketing, recruitment and hiring, recommendations regarding how to ensure

8 Meathead meaningfully considers qualified applicants age 40 and over and female

9 applicants for employment, and feedback regarding Defendant's good faith efforts to

10 comply with this Decree, the ADEA, Title VII, and the EPA, as well as Defendant's

11 efforts to recruit applicants 40 and over and female applicants and ensure a company

12 culture that accepts employees of all ages, whether male or female. The Monitor's report

13 shall cover all the Monitor's responsibilities, as detailed in the Decree. The Semi-Annual

14 Report shall also include:

15    (a)    a report regarding employment of eligible Claimants interested in

16 working for Meathead, as outlined in Section IX.A;

17    (b)    a copy of the final Policies and Procedures, and a copy of signed

18 acknowledgments by all employees;

19    (c)    an outline of the approved training content, a copy of the training

20 materials, dates for future trainings, a list of attendees, and copies of the evaluation forms

21 submitted;

22    (d)    the recruitment plan and an explanation regarding any changes to

23 Meathead's recruitment and hiring practices, pursuant to Section XI.D;

24    (e)    the results of the Monitor's semi-annual audit of Meathead's

25 marketing, recruitment, and hiring practices and applicant data, including survey

26 responses and whether Meathead has failed to recruit or hire qualified applicants 40 and

27 over;

28    - 29 -
[Proposed] Consent Decree

1    (f)    a copy of the Complaint Log, with a summary of the procedures and

2  recordkeeping methods utilized for centralized tracking;

3    (g)    a statement confirming the Notice attached as Exhibit A has been

4  posted;

5    (h)    an evaluation of Meathead's progress and compliance with the hiring

6  endeavors outlined in Section XI.E.1 and the applicant flow log; and

7    (i)    The status of Defendant's compliance with the terms of the Decree.

8    3.    *Exit Report*.  Meathead shall report to the EEOC at least 60 days prior to the

9  expiration of this Decree regarding its compliance with this Decree. Simultaneously, the

10  Monitor shall report to the EEOC regarding all the Monitor's responsibilities under this

11  Decree, provide feedback regarding Meathead's compliance with this Decree and the

12  ADEA, Title VII, and the EPA, and provide the results of Meathead's efforts to ensure

13  employment decisions are made without regard to age or sex. The Monitor shall make

14  recommendations, where appropriate, for extension of the term of the Decree. The EEOC

15  may request further information regarding Meathead's compliance.

16    4.    *Confidentiality of Reports*.  All reports herein shall remain confidential.

17                                               **XII.**

18                **COSTS OF ADMINISTRATION AND IMPLEMENTATION**

19                              **OF CONSENT DECREE**

20    Defendant shall bear all costs associated with its administration and

21  implementation of its obligations under this Consent Decree.

22                                               **XIII.**

23                          **COSTS AND ATTORNEYS' FEES**

24    Each party shall bear its own costs of suit and attorneys' fees. Defendant shall bear

25    all costs associated with carrying out the terms of this Decree.

26

27

28                                               - 30 -
                                      [Proposed] Consent Decree

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## XIV.

## MISCELLANEOUS PROVISIONS

A.     Unless otherwise stated, all notices, reports and correspondence required under the Decree shall be delivered (1) by U.S. Mail to the attention of Anna Y. Park, Regional Attorney, U.S. Equal Employment Opportunity Commission, 255 East Temple Street, 4th Floor, Los Angeles, California, 90012; and (2) by email to lado.legal@eeoc.gov and anna.park@eeoc.gov. Defendant shall maintain copies of all such notices, reports and correspondence for at least the term of the Decree.

B.     During the term of this Decree, Defendant shall provide any potential successor-in-interest with a copy of this Decree within a reasonable time of not less than 30 days prior to the execution of any agreement for acquisition or assumption of control of any or all of Meathead's facilities, or any other material change in corporate structure, and shall simultaneously inform the EEOC of the same.

C.     During the term of this Decree, Defendant shall ensure that each of its directors, officers, human resources personnel, managers, and supervisors are aware of any provisions of this Decree that relate to his/her job duties or obligations.

D.     The Parties agree to entry of this Decree and judgment subject to final approval by the Court. All parties, through the undersigned, respectfully apply for and consent to this entry of Decree.

## XV.

## XV. TAX REPORTING UNDER INTERNAL REVENUE CODE SECTIONS 162(f) AND 6050X

A.     The EEOC may be required to report the fact of this settlement to the IRS under Section 162(f) and 6050X of the Internal Revenue Code which allow for certain payments by employers to be deducted from the employer's taxes. If the EEOC is required to do so, the EEOC will provide the employer with a copy of the 1098-F form that it will provide to the Internal Revenue Service (IRS).

1      1.     The Defendant's EIN is: 753123197

2      2.     The individual to whom the EEOC should mail a copy of the form 1098-F, if

3   the EEOC is required to issue one is:

4          Name: Meathead Movers, Attention Accounting Manager

5          Physical Address: 3600 South Higuera Street, San Luis Obispo, CA 93401

6      3.     The EEOC has made no representations regarding whether the amount paid

7   pursuant to this settlement qualifies for the deduction under the Internal Revenue Code.

8      4.     The provision of the Form 1098-F by the EEOC does not mean that the

9   requirements to claim a deduction under the Internal Revenue Code have been met.

10     5.     Any decision about a deduction pursuant to the Internal Revenue Code will

11  be made solely by the IRS with no input from the EEOC.

12     6.     The Parties are not acting in reliance on any representations made by the

13  EEOC regarding whether the amounts paid pursuant to this agreement qualify for a

14  deduction under the Internal Revenue Code.

15                                **XVI.**

16                             **SIGNATURES**

17         This Decree may be executed in several counterparts, each of which shall be

18  deemed an original, but all of which shall constitute one and the same instrument. All of

19  such counterpart signature pages shall be read as though one, and they shall have the

20  same force and effect as though all the signers had signed a single signature page.

21  Electronically transmitted executed copies of this Decree shall be fully binding and

22  effective for all purposes whether or not originally executed documents are transmitted to

23  the other party. Fax signatures on documents are to be treated the same as original

24  signatures.

25

26

27

28                                - 32 -

1   All Parties, through the undersigned, respectfully apply for and consent to the entry

2   of this Decree as an Order of this Court.

3

4

5                                                    Respectfully submitted,

6                                                    U.S. EQUAL EMPLOYMENT
7                                                    OPPORTUNITY COMMISSION

8   Date: _9/26/25_____
9                                            By:  Anna Y. Park
10                                                 Regional Attorney

11                                                   MEATHEAD MOVERS, INC.

12
13  Date: _9/26/25_____
14                                           By:  Aaron Steed
                                                 Chief Executive Officer
15

16  APPROVED AS TO FORM:

17                                                   FOR U.S. EQUAL EMPLOYMENT
                                                     OPPORTUNITY COMMISSION
18

19  Date: _9/26/25_____
20                                               Anna Y. Park

21                                                   FOR MEATHEAD MOVERS, INC.

22

23  Date: _9/26/25_____
24                                               Lauren M. Brody
                                                 MILLER BARONDESS, LLP
25                                               2121 Avenue of the Stars, 26th Floor
                                                 Los Angeles, CA 90067
26

27

28                                      - 33 -
                                 [Proposed] Consent Decree

1

## [PROPOSED] ORDER

2
The provisions of the foregoing Consent Decree are hereby approved and

3
compliance with all provisions thereof is HEREBY ORDERED.

4

5

6

7
Date: _____          _____

8
                                The Honorable Dale S. Fischer
                                United States District Judge for the Central
                                District of California

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

# EXHIBIT A

**EXHIBIT A**

**NOTICE TO EMPLOYEES AND APPLICANTS**

The U.S. Equal Employment Opportunity Commission ("EEOC") filed a lawsuit in the United States District Court for the Central District of California against Meathead Movers, Inc. ("Meathead"), Case Number 2:23-cv-08177-DSF-AGRx. The EEOC alleged that between 2017 and the present, Meathead failed to hire or recruit qualified individuals age 40 and over into employment positions with Meathead because of their age in violation the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq*., and that Meathead failed to hire or recruit qualified female individuals into employment positions because of their sex and pay equal wages in violation of Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 ("Title VII") and the Equal Pay Act ("EPA"). Meathead denies these allegations. Meathead and the EEOC have agreed to resolve the lawsuit and have entered into a Consent Decree in which Meathead agreed to pay monetary relief in the form of lost wages and liquidated damages, and to implement comprehensive injunctive remedies, including engaging an external Equal Employment Opportunity ("EEO") Monitor, revising its recruitment and hiring policies and procedures, training, tracking complaints, and providing the EEOC with periodic reports.

Meathead is committed to complying with federal anti-discrimination laws in all respects and encourages reporting any such conduct. Age and sex discrimination will not be tolerated. Any employee who files a complaint or charge of discrimination, gives testimony or assistance, or participates in any manner in an investigation will be protected from retaliation.

Federal law prohibits harassment or discrimination against any employee or applicant for employment because of a person's age, sex, disability, race, color, religion or national origin, including with respect to hiring, compensation, promotion, discharge, and the terms and conditions or privileges of employment. Federal law also prohibits retaliation for those who oppose or resist harassment or discrimination or participate in investigations regarding complaints of discrimination. If you believe that you have been subjected to discrimination or harassment because of your age or sex, you may contact the EEO Monitor, [Name], at [Contact Information] and/or you may seek assistance from:

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
255 East Temple Street, 4th Floor
Los Angeles, CA 90012
TELEPHONE NUMBER:

THIS IS AN OFFICIAL NOTICE AND MUST NOT BE DEFACED BY ANYONE.

This Notice shall remain posted for a term of _____ years.

756448.1

*EEOC v. Meathead Movers*: Exhibit A to [PROPOSED] Consent Decree